## J. W. YOUNG v. G. W. O'NEAL ET AL.

### (Case No. 509.)

1. PARTIES.— In an action to cancel and declare void a pre-emption survey, alleged to have been fraudulently procured by the party in possession, and to compel a survey thereof for the plaintiff, the county surveyor is a proper party defendant.

2. PRE-EMPTION.— In May, 1873, a plaintiff had settled on unappropriated public domain, and made improvements; in June, 1873, he left his furniture and stock in charge of the defendant, and remained absent until January, 1874, declaring to him when he left, that he would pre-empt the land if it was vacant. In December, 1873, the defendant pre-empted the land for himself. In July, 1874, the plaintiff attempted to pre-empt, and demanded a survey, which was refused. In a suit to compel a survey, and against the defendant in possession for damages, *held* —

    1. The plaintiff had until May 26, 1874, to make application for the land as a homestead, have it surveyed, and the field notes returned, and during that period, no one could interfere with him by file or location.

    2. After May 26, 1874, the plaintiff having taken no steps to pre-empt the land, it was subject to be appropriated by another.

    3. The ignorance of plaintiff as to whether the land was vacant could not alter his rights.

    4. Though the defendant's file and survey in December, 1873, as against plaintiff, was of no avail, yet, after the expiration of the time when plaintiff could have acquired title, there was no necessity for a resurvey.

    5. As between the government and all others except the plaintiff, the file and survey of defendant of December, 1873, separated the land from the public domain.

    6. The plaintiff by his laches lost the right to question the file and survey of defendant.

3. DISTINGUISHED.— This case distinguished from Thornton *v.* Murray, 50 Tex., 168.

APPEAL from Bee. Tried below before the Hon. D. D. Claiborne.

O'Neal and wife, the plaintiffs below, in their petition filed October 10, 1874, alleged that on the 30th of July, 1873, O'Neal was the head of a family, and owned no land and had no homestead; that at that date they entered upon the 160 acres of land sued for, then vacant, and claimed it as a homestead pre-emption, intending in good faith to occupy and improve the land, for three years from the 30th of July, 1873, in order to obtain the patent therefor; that they built a dwelling house upon it, fenced in a field, and made improvements to the value of $500; that on September 1, 1873, business of an important nature called them to eastern Texas; that putting special trust in the defendant, Wesley Young, they left him in charge of the premises, their furniture, stock and farming utensils, upon his express promise to take care of them until their return, and redeliver the same to them; that they were unavoidably absent five months, and on their return Young set up a claim to the premises and refused to deliver the same to them; that Young, in December, 1873, pre-empted the land for himself, making affidavit in accordance with the statute, and Atkins, the county surveyor, surveyed the same for him; that plaintiffs in July, 1874, made the affidavit to pre-empt the land, etc., and presented it to Atkins, and demanded that he survey it for them, which he refused to do.

They averred the value of the use and occupation to be $300, for which they prayed judgment and for damages; that the location and survey for Young be cancelled, and for a *mandamus* against Atkins to survey the land for them as a pre-emption, etc.

The defendants filed general and special exceptions for misjoinder of causes of action and parties, and that it did not appear the land was vacant land. They also answered by general denial, and that Young, the land being

vacant, had selected and appropriated it as a homestead under the pre-emption laws.

The defendants' general and special exceptions were overruled. The case was submitted to a jury, who found for the plaintiffs' right of pre-emption on the land, and $45 for use, rent and profits. Judgment cancelling the survey made for Young, and ordering the surveyor to survey the same land for plaintiffs, and for the $45 rents.

The defendants moved for a new trial, which motion was overruled.

The facts proven were substantially as follows:

In June, 1873, the plaintiffs were living upon the land and had been for several years previous. It was not then ascertained definitely whether it was vacant land. They had built a house upon, cleared a small field, and had some cattle and hogs upon the premises.

In June, 1873, they left the premises and their furniture and stock in possession of Young, to take care of and redeliver to them upon their return from eastern Texas, which Young promised to do.

Hunt, a witness for plaintiff, says: In June, 1873, the plaintiff on leaving, instructed Young "that if the county surveyor of Bee county made any survey in the neighborhood of the premises, to have said surveyor definitely ascertain whether the land was vacant," and if so, "the plaintiff would file upon the same and claim the same as a homestead pre-emption."

Mrs. O'Neal says, "they instructed defendant that if there were any surveys made in the neighborhood, to ascertain whether said premises were on vacant public domain, and if so, they intended and wished to file upon the same as a homestead pre-emption." They returned in January, 1874, demanded possession of the premises of Young, who stated he had filed upon the same as a homestead pre-emption for himself and had it surveyed. Atkins, the surveyor, proved that in December, 1873, he

ascertained the land to be vacant, and he then surveyed it for Young. On July 18, 1874, O'Neal made affidavit of his settlement on the land, and presented it with a designation of the land to the surveyor, Atkins, demanding a survey, which Atkins refused, as he had already surveyed the land for Young in December, 1873, upon his file and location, which with the field notes have been forwarded to the general land office.

The court instructed the jury, among other charges, that if, while Young was holding the land for plaintiffs as their agent, he ascertained that it was vacant, and had the same located and surveyed for himself before the 26th of May, 1874, that would be a fraud upon the rights of the plaintiff, and the jury should find for the plaintiff.

A charge asked by defendants, that if O'Neal and wife lived upon the land on the 26th of May, 1873, or prior to that time, and failed to have it surveyed within twelve months after that date, he acquired no title to the land, and could not recover it against a party who has under the law appropriated it as a homestead, was refused.

The motion for a new trial was based upon, 1. The overruling the general and special exceptions to the petition. 2. Error in charges given and refusal to give charges. 3. That the verdict and judgment is against the evidence and the law.

*L. S. Lawhon,* for appellant.

*Lane & Payne,* for appellee.

QUINAN, COMMISSIONER.— 1. The point made by appellant in his brief, on the first assignment of error, is, that the petition shows upon its face that the land in controversy was not vacant, and hence that no cause of action was shown against Atkins, the surveyor. This point is not well made. The object of the suit was to declare the

survey made by Atkins for Young null, and to command Atkins then to survey it for plaintiff. He was therefore a proper party.

2. The exception to the introduction of testimony fails to indicate upon what ground it was objected to, and will not therefore be considered. It is incumbent upon the objecting party to state the reasons why the testimony should not be received.

3. The charge of the court was an erroneous exposition of the law applicable to the case. If it were true that the location and survey of the land by Young for himself before the 26th of May, 1874, conferred no right upon him in the land, yet it would not follow that the jury would be therefore warranted in finding for the plaintiffs. The proof shows the settlement on the land by O'Neal and wife in May, 1873, and that the land was then vacant. They had until the 26th of May, 1874 (under the act of May 26, 1873) to make application for it as a homestead, and have the same surveyed, and the field notes returned to the general land office. During that period the right to interfere with them "by file, location or survey, by virtue of any land claim whatever," was prohibited by law. Pasch. Dig., art. 7048. But, having suffered the twelve months given them by law in which to pre-empt the land to elapse, they no longer preserved any right to it. It was subject to location by any one having a valid certificate, or to settlement under a pre-emption claim. The case was not altered by the fact that they were ignorant that the land was vacant, nor could their intention to claim it at some future day, when ascertained to be vacant as a homestead, affect the construction of the statute. Their occupancy dated from the passage of the law. The land was vacant whether they knew it or not, and after the lapse of twelve months from the 26th of May, 1873, they could possess no legal or equitable rights or claims respecting it as against another locator or pre-emptor, or

party in possession. Cravens *v.* Booth, 17 Tex., 243; Jennings *v.* De Cordova, 20 Tex., 513; Teel *v.* Huffman, 21 Tex., 781; Linney *v.* Kohlhass, 26 Tex., 332.

And so, although Young's location in December, 1873, as against O'Neal and wife, was of no avail, yet after the expiration of the period when they could have acquired a title to the land as a homestead, there was no necessity of a resurvey by him. As between him and the government, and all other persons than O'Neal and wife, his file and survey in December, 1873, was a valid separation of the land from the public domain, and O'Neal and wife, by neglecting to set up their claim within the time limited by law, have lost their right now to question it. Teel *v.* Huffman, 21 Tex., 781; Woods *v.* Durrett, 28 Tex., 429.

4. The charge asked by the defendant, if we are correct in these views, was applicable to the case and should have been given.

5. That the testimony did not warrant the verdict and judgment, we think is also apparent, and consequently that a new trial should have been granted.

The testimony does not disclose any other contract upon the part of Young with O'Neal and wife, than simply to take care of the premises and other property for them and deliver it to them upon their return. The notification to him that if the land proved to be vacant they would file upon it and pre-empt it, imposed no obligation upon him which would deprive him of the right to acquire it for himself should their right lapse. He did not undertake to, nor could he pre-empt it for them. Nor did they lose their right to carry into a more perfect title their incipient right by virtue of their settlement on the land, though ignorant that it was public domain, in consequence of their temporary absence. Upon their return they had ample time, and they could still, by taking the proper steps to dispossess Young and vacate his file upon the land, have matured their claim into a title. They

were apprised as early as January that Young claimed the land as his own. They suffered six months thereafter and nearly two months beyond the twelve months allowed them by law to file their claim, to elapse before taking any steps to assert it. The proof does not show that they were hindered or delayed by any acts of Young. The case of Thornton v. Murray, 50 Tex., 168, may seem to militate with these views, but the circumstances of that case were peculiar. There the land had been settled by Bishop and surveyed for him, and the field notes recorded. It had been the homestead of Bishop and wife and was such when they separated. Mrs. Bishop sued for divorce, and in the suit recovered judgment for the land. During the pendency of that suit, one Thornton took possession of the land under color of a pre-emption claim. It was at the time constructively in possession of Bishop and wife. There was cotton in the fields unpicked, cotton in the cribs, their stock running on the place, the houses locked up and fastened. There were twenty-five acres cleared and fenced, with dwelling house and outhouses. Thornton appears to have taken advantage of Bishop's fleeing from the county, and Mrs. Bishop's desertion by her husband, wrongfully to enter upon the land, when it was in fact in the actual occupancy of renters from her husband, and while she was asserting her claim to the homestead.

She had been chargeable with no laches in the assertion of her claim, and it was only by Thornton's wrongful act that she was kept out of the actual possession. In the present case, O'Neal and wife, except making demand in January, 1874, on their return after an absence of six months, upon Young for possession, made no effort to regain it, or to secure their claim to the land, until 18th July, 1874, when they applied to the surveyor for a survey of the land, nor on his refusal to survey it, did they institute suit until 14th October. This was not the exercise of such diligence in securing the bounty of the gov-

ernment as should entitle them to the like measure of relief, which in the Thornton and Murray case was extended to Mrs. Bishop.

6. While the policy of the state has always been to favor the actual settler and to provide homes for the homeless, our legislation, statutory and constitutional, shows also by the frequent and urgent provisions for the return of field notes, that the settlement of floating and unfixed claims to lands, and the ascertainment definitely of what lands remained open to settlement, was no less a subject of legislative regard. It assuredly was not contemplated, that one who settled upon the public lands for the purpose of acquiring a homestead thereon, while disregarding the provisions of the law requiring the filing of his application and the survey and return of the field notes within the limited time, should yet preserve a right to claim it, and to withhold the land from settlement and location by others indefinitely. We think that would be the assertion of an equity in contravention of the law.

We are of opinion that the proper disposition of this case is that it be reversed and remanded.

REVERSED AND REMANDED.

[Opinion delivered March 15, 1881.]