### W. G. RAOUL, TRUSTEE, v. J. J. TERRELL, COMMISSIONER.

#### No. 1376.   Decided June 19, 1905.

**Public Land—Certificate—Location.**

An application for location of eight railroad land certificates upon a solid body of public domain containing about 35,000 acres, which was in grass and gave neither specific designation of the land to be appropriated by either certificate or of what part of the designated tract was to be appropriated by the whole in the event it contained more than was called for by the certificates, though irregular (Rev. Stats., art. 4131) was sufficient to constitute an appropriation of the land as against other certificates subsequently located, surveyed and patented thereon.   (Pp. 159, 160.)

Original application for writ of mandamus by Raoul against Terrell and others to require issue of patents to land.

*Thos. W. Dodd* and *Denman Franklin & McGown,* for relator.—The file of July 15, 1881, made for the Texas Trunk Railway Company was a valid file and appropriated of the territory covered by it only the 9,600 acres called for in the fifteen certificates filed with the surveyor; the balance of said territory was neither appropriated by such location nor segregated from the public domain and was subject to location. Jumbo Cattle Company v. Bacon & Graves, 79 Texas, 5; Houston & T. C. Ry. Co. v. State, 90 Texas, 607; Maddox v. Schley, 22 S. W., 999. Rev. Stats., art. 4133, gives to such an entry or location only a preference right of location and survey over any subsequent entry or location.

The locator could *appropriate,* however, only the acreage called for by his certificates.

The file of April 18, 1882, made for the Texas Mexican Railway Company was valid and appropriated of the territory covered by it the 5,120 acres called for in the eight certificates filed with the surveyor. (It having expressly excluded from the location so much of the territory covered by the file as might have been appropriated by the previous file of July 15, 1881.) And the surveys having been made in due time, and after the file of July 15, 1881, had become void for failure to survey the land in the twelve months required by law, and the field notes thereafter duly returned to the land office petitioner acquired a valid right in the land and the land commissioner should have issued his patents. Rev. Stats, arts. 4154, 4176, 4186, 4191.

Upon these facts the duty of the land commissioner to issue the patents is clearly ministerial, defined by law, and the mandamus should issue. Hazlewood v. Rogan, 95 Texas, 304; Schendell v. Rogan, 94 Texas, 595; Jernigan v. Finley, 90 Texas, 211; Commissioner v. Smith, 5 Texas, 473.

*R. V. Davidson,* Attorney-General, and *T. S. Reese,* Assistant, for

respondent Terrell.—The vital question is as to the validity of the Texas-Mexican file of April 18, 1882. Upon this question we submit, as a proposition, the file made by Powell & Gage for the eight Texas-Mexican certificates, made within twelve months after the date of the Texas-Trunk file, was void, and conferred no right as against the subsequent location of the Confederate Veterans certificates, made for the school fund after the expiration of twelve months from the date of the Texas-Trunk file.

The question is, "Did the Texas-Mexican file legally appropriate for those certificates any of the land?" or "did the Texas-Trunk file withdraw from location for twelve months all of the land embraced in the file?"

The right of a subsequent locator to file upon the land covered by a previous location, within twelve months of the date of the prior location, speculating upon the chances of such prior locator complying with the requirement of law as to survey and return of certificates and field notes, has been denied in numerous cases. Upsher v. Pace, 15 Texas Rep., 531; Johns v. Pace, 26 Texas Rep., 270; McKinney v. Grassmeyer, 51 Texas Rep., 381; Thompson v. Johnson, 2 Posey U. C. 260; Vance v. Lindsey, 60 Texas Rep., 286; Cassin v. O'Sullivan, 61 Texas Rep., 595.

But the question of the right of a subsequent locator to appropriate whatever surplus there might be after satisfaction of the certificates of a prior locator, by a file made for that purpose only, within twelve months of the date of such prior location, has not, so far as I can find, been decided in this state. A file or application must be certain and definite, must point out and identify with reasonable accuracy the very land sought to be appropriated. It must be such as to fix the right of the locator then and there to certain definitely identified land. This the Texas-Mexican file did not, and, in the nature of things, could not do. The owner of the Texas-Trunk certificates had the right for twelve months to survey for those certificates 19,200 acres of land within his file, taking it where he pleased, and if his file was valid at all, which relator admits, it appropriated the entire tract to this extent. The owner of the Texas-Mexican certificates, by virtue of his file, got the right (and claimed no more) to survey sixteen sections out of whatever part of said 35000 acres was not afterwards covered by the surveys for the Texas-Trunk certificates. What land his file really covered, or was intended to cover, was left to be afterwards determined by the action of the owner of the Texas-Trunk certificates.

This court says, in Gracey v. Hendrix (93 Texas Rep., 31): "The right to the land did not, by law, attach upon any day subsequent to that on which the papers were filed with the Commissioner of the General Land Office, because the law is not so written, and, if compliance was not had on that day, what was subsequently done would not inure to the benefit of a previously filed void application." Citing McKinney v. Grassmeyer, supra. If the Texas-Mexican file was ever good, it was good at the time it was made. If it appropriated any land, it did so from that time. If good when made, surveys could have been at once made for the eight certificates. Now, obviously, this could not have been done, for the reason that, until the surveys were made

for the Texas-Trunk certificates, it could not be determined where the Texas-Mexican certificates were to be surveyed.

A file is not sufficient if it only sets forth the quantity of land which the locator desires to appropriate. The certificate does that sufficiently. The file must designate the particular tract or parcel of land, so that from the file it can be determined, not how much, but what, land is claimed. This the Texas-Mexican file did not do. It did not purport to do more than to say in substance "I make this file upon whatever land within these boundaries is not hereafter surveyed for the Texas-Trunk certificates." This does not "particularly describe the land applied for." (Art. 4131, Rev. Stat.)

GAINES, CHIEF JUSTICE.—This is a petition by the relator Raoul for a writ of mandamus to compel the Commissioner of the General Land Office to issue to him patents for eight sections of land in Pecos County, surveyed upon alternate certificates issued to the Texas-Mexican Railway Company. The lands in question having been leased by the State as lands belonging to the school fund the lessees were made parties defendant, but have not answered.

The facts as disclosed by the petition and answer are as follows:  On the 16th day of July, 1881, one J. S. Daugherty being the holder as agent or owner of fifteen alternate certificates issued to the Texas Trunk Railway Company and calling in the aggregate for 19,200 acres of land filed the same with the surveyor of Pecos County with an application to locate them upon a solid body of the public domain containing about 35,000 acres. The entry was in gross and neither gave any specific description of any part of the land to be appropriated by either certificate or of what part was to be appropriated by the whole in the event it contained more land than was called for by the certificates. On the 18th day of April, 1882, the eight certificates of the Texas-Mexican Railway Company were located in the same manner upon the same lands—excepting, however, "surveys made and to be made by virtue of Texas Trunk Ry. Co. certificates No. 311 and 325 filed within said boundary July 15, 1881."

No surveys were ever made under the location of the Texas Trunk Railway Company's certificates, and, after the lapse of twelve months, the location was forfeited. Subsequent to this forfeiture and before any surveys had been made by virtue of the Texas-Mexican Railway Company's location, certain valid Confederate Veteran certificates were located upon the lands now in controversy and surveys were made and patents were issued therefor. These lands were, however, subsequently surveyed by virtue of the Texas-Mexican Railway Company's certificates and the field notes and certificates in proper time returned to the General Land Office. The relator, as trustee and successor to the rights of the Texas-Mexican Railway Company, afterwards tendered the fees for the issue of the final title and demanded the patents; but the Commissioner refused a compliance with the demand.

In view of the statute (Rev. Stat., art. 4131) which prescribes that the application for a location of a land certificate, "shall particularly describe the claim to be surveyed and the land applied for" it would seem that the location of the Texas-Trunk certificates by describing a

tract of land so largely in excess of the quantity subject to appropriation by them, was, to say the least of it, irregular. But, on the other hand, a strict compliance with the letter of the statute was in many cases impracticable. Where a certificate was to be located upon a body of land largely in excess of the amount entitled to be appropriated by it, the applicant could not "particularly describe the land to be applied for" without a preliminary survey, which we think was not contemplated. Besides we are of the impression that locations of the character of that now under consideration were not unusual when the public domain was subject to be appropriated in that manner. Such was the original location in the case of the Jumbo Cattle Company v. Bacon (79 Texas, 5), and the opinion in that case seems to recognize that location as legal, though the determination of that question was not necessary to a decision of that case. We are of the opinion, therefore, that the location for the Texas Trunk Railway Company's certificates should not be held void. It follows, we think, that the Texas-Mexican Railway Company had the right to file its certificates upon the same land subject to the prior location of the Texas-Trunk certificates as was done in this case; and that when the first location became forfeited, it had the right to have surveys made by virtue of its certificates upon any part of the lands designated in its application. It could not have had its surveys made until the Texas Trunk Railway Company had designated the lands it intended to appropriate by surveys, which was never done.

We are of the opinion that the mandamus should be awarded and it is accordingly so ordered.