### TEXAS MEXICAN RAILWAY COMPANY v. JAMES F. SCOTT.

#### Decided April 27, 1910.

**1.—Trial—Agreed Facts—Practice.**

When a case is submitted to a trial court upon an agreed statement of facts under the provisions of article 1293, Rev. Stats., in the absence of some agreement to the contrary the court is confined to the facts contained in the agreement and must declare the law arising from said facts alone. The court has no authority to find other or different facts.

**2.—Location of Land Certificate—Description of Land.**

A locator of a land certificate under the laws of Texas was required to make an entry thereof or an application for survey in which the land desired should be described with sufficient certainty to apprise the surveyor what particular land he was required to survey, and where the land is described in the application both by metes and bounds and by a general designation of the locality, the description by metes and bounds must prevail.

**3.—Same—Subsequent Locator.**

An entry of land certificates and the description in the application for survey of the land desired, considered, and held not to conflict with or seek to appropriate any of the land described in a prior location or entry.

**4.—Same—Forfeiture of Right.**

It was not intended by the Legislature that one who filed upon public land could disregard the requirements of the law that certain steps must be taken within a certain time to perfect his right to a patent and still preserve a right to claim the land and to withhold it indefinitely from location by others.

**5.—Same—Same.**

A locator of a land certificate who did not cause a survey of the land sought to be appropriated to be made within twelve months from the date of his file or entry, can not after such period claim any right under and by virtue of such file or entry; the file or entry becomes void and can not be made the basis of any valid claim to the land. A refiling of the same or any other certificate on the same land on the last day of the twelve months would not be a perpetuation of the right acquired by the first entry. Hence another person who located upon the same land during the twelve months would have a prior right thereto.

**6.—Same—Floating Certificate.**

Under the provisions of article 4134, Sayles' Civ. Stats., it was unlawful to lift or float a land certificate after the same had been located upon vacant land; hence a location made by virtue of certificates which had been thus unlawfully floated would be void.

Appeal from the District Court of Nueces County. Tried below before Hon. W. B. Hopkins.

*E. A. Atlee,* for appellant.

NEILL, ASSOCIATE JUSTICE.—This suit was originally instituted by J. P. Nelson and others against the Texas Mexican Railway Company, but the rights of all parties plaintiff having subsequently been acquired by James F. Scott, the suit was prosecuted in his name alone. The case was submitted to the court on an agreed statement of facts, approved by the court under article 1293 of Revised Statutes of 1895, the controversy being an ordinary suit of trespass to try title to ten sections of land in Hidalgo County, described in the agreed statement by metes and bounds.

On December 24, 1908, the court rendered judgment for the plaintiff, filing its conclusions of fact and of law, to all of which the defendant excepted and appealed from, the judgment.

The agreed statement, after first describing the ten sections of land by their survey numbers, the certificates under which they were located, and by metes and bounds, and stating that the land in controversy is situated in Hidalgo County, but that the suit was brought in Nueces County by the consent of all the parties, continues as follows:

"Third: That each of the above and foregoing ten surveys were for 640 acres, and that all the land covered by them was, on the 24th day of June, A. D. 1881, 'vacant, unappropriated public domain,' and subject to location under the laws in force at that time, by virtue of valid land certificates.

"Fourth: That each and all of the certificates or land scrip under and by virtue of which the parties hereto respectively claim, are and were valid as originally issued by the Commissioner of the General Land Office of the State of Texas and subject to location upon any vacant, unappropriated public domain.

"Fifth: That plaintiff is subrogated to all of the rights of the original owners of said certificates and to any and all valid locations made by virtue thereof.

"Sixth: That on June 24, 1881, plaintiff's vendors, the then owners thereof, filed and entered for survey in the office of the surveyor of Hidalgo County, Texas, ten certain land certificates, Nos. 1146 to 1155, both inclusive, theretofore lawfully issued to the C. C. S. D. & R. G. N. G. R. R. Co., each for 640 acres; that plaintiffs are subrogated to the right of the owners of the original certificates held or owned by them under and by virtue of said filing and entry; that at the time of such entry of said certificates the owners thereof designated a like quantity of land to be surveyed for the State as alternate sections, and aggregating 12,800 acres.

"Seventh: That such file and entry, so made on June 24, 1881, by John J. Dix, agent for the owners, is as follows:

" 'The State of Texas, County of Nueces.

" 'To the County Surveyor.—Sir: By virtue of ten land scrip issued to Corpus Christi, San Diego & Rio Grande Narrow Gauge Railroad Company by W. C. Walsh, Com. Gen. Land Office, March 15, 1881, and numbered consecutively 1146, 1147, 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, for 640 acres each and herewith deposited, you will survey or cause to be surveyed by reason of this application

or entry (12,800) twelve thousand eight hundred acres of land within the county of Hidalgo, within the following bounds, to wit: To begin at the northeast corner of a grant known as La Noria de Tio Ayala, granted to Esteban Martinez, and thence south four miles, east five miles, north four miles and west five miles. This entry is made to occupy any vacant land that may be and is situated in the angle made by the east boundary line of the aforesaid and the south boundary line of a grant to Jose Antonio Leal de Leon and known as San Antonio del Encinal, or the vacancy, if any, between the east boundary of one and the west boundary of the two aforesaid grants, not intending in any manner to conflict with either of them or any valid grant or survey, but without reference especially to a survey known as Realita, which is believed to have been illegally surveyed without warrant or authority of law. A copy of such file and entry is made a part hereof, marked exhibit 'A.'

"Eighth: That no surveys were ever made under the filing and entry of said ten certificates mentioned in the foregoing paragraph, and that thereby said application, entry and location became null and void.

"Ninth: That on June 24, 1881, there were filed by the owners thereof and entered for survey in Hidalgo County in due form of law in the office of the surveyor of said county ten certain land certificates, numbered 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, theretofore lawfully issued to the said C. C. S. D. & R. G. N. G. R. R. Co., each for 640 acres, the same being the certificates subsequently located by the owners thereof on the lands described in paragraph L of this agreement, and being the same upon which plaintiffs base their right to recover herein.

"Tenth. Said ten certificates being filed together with ten other certificates belonging to said owners, unnecessary to mention; and in their application, which was regular in form, filed with said certificate, said owners directed that same be located upon the lands lying to the west of two grants known as the La Noria de Tio Ayala and El Lucero, the same being different and distinct lands from those in controversy in this suit, and said land lying to the west of said two grants being 'vacant and unappropriated public domain.'

"Tenth (a): That no surveys were ever made under said last mentioned file and entry, and that thereby said application, entry and location of said described certificates became null and void.

"Eleventh: That on September 19, 1881, the defendant filed and entered in due form of law, in the surveyor's office of Hidalgo County, twenty-two land certificates, numbered 200 to 222, both inclusive, theretofore lawfully issued by the Commissioner of the General Land Office to the defendants, and each being for 640 acres of land; that at the time of the filing of said application and entry defendant designated a like quantity of land to be surveyed for the State as alternate sections, the aggregate amount for the State and the defendant being 28,160 acres; that said application, entry and location in all respects complied with the laws then in force, provided the land in controversy, being covered in part by said file and entry, "was 'vacant and unappropriated public domain' at the date and time of said application and

entry, and that the land in controversy herein is included and embraced within the metes and bounds of the land so entered and located and filed upon by said defendant on said 19th day of September, 1881. A copy of such entry and application is made a part hereof, marked exhibit 'B.'

"Twelfth: That in its said application defendant designated and described the land to be surveyed under said 22 certificates as follows: 'Surveys to begin at the S. E. corner of a grant called El Lucero, original grantee, Antonio Elizondo; thence W. with its S. b'dy 1231 vs. to S. E. cor. of the Alameda; thence S. 900 vs.; thence E. on N. b'dy of Santa Quiteria grant, 10,911 vs.; thence north 7600 vs.; thence E. 5700 vs. to the W. line of a grant called Los Finados; thence north 4900 vs. to the S. b'dy of a grant called San Antonio del Encinal; thence W. 15380 vs. to a corner of La Noria de Tio Ayala; thence south 7800 vs. to the N. W. corner of file No. 17 for A. J. Leo; thence E. 1900 vs.; S. 3800 vs. to the place of beginning; the object of this survey is to embrace all the public lands not legally appropriated between the grants of El Lucero and Las Norias on the west, and San Antonio del Encinal on the north, Los Finados on the east, and on the south by Santa Quiteria and El Alazan.'

"Thirteenth: That at the said filing and entry aforesaid of the defendants upon the said date, there was within the metes and bounds aforesaid and between the grants aforesaid 'vacant and unappropriated public domain' lying to the south and east of the lands in controversy more than sufficient to satisfy said 22 certificates of the defendant, and sufficient upon which to locate 14,080 acres for the defendant and a like quantity for the State.

"Fourteenth: That thereafter, and within the time prescribed by law, defendant caused proper surveys to be made of the land so applied for and the field notes thereof, together with said twenty-two certificates, numbered 200 to 222, both inclusive, to be returned to and filed in the General Land Office of the State of Texas, as required by law; and that thereafter patents to 22 sections of land included within the bounds described in defendant's said application, file and entry, were issued thereon to defendant; and that the land in controversy is covered by the following certificates and surveys made for the defendant, to wit: certificate 219, survey 87; certificate 202, survey 45; certificate 201, survey 43; certificate 203, survey 47; certificate 204, survey 49; certificate 205, survey 51; certificate 207, survey 57; certificate 206, survey 55; certificate 208, survey 61; certificate 220, survey 89.

"Fifteenth: That on the 24th day of June, A. D. 1882, the then owners of the ten certificates enumerated in paragraph 9 of this agreement and numbered respectively 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135, and 1136, which had theretofore been located on lands lying west of the La Noria de Tio Ayala and Lucero grants, caused the same to be lifted or floated, and upon said date last aforesaid refiled and re-entered the same for survey in Hidalgo County, in the office of the surveyor thereof, and in their said entry and application said owners directed that said certificates be located on the lands lying to the south of the tract called San Antonio del Encinal and

east of the tracts called La Noria de Tio Ayala and El Lucero; that said ten certificates had theretofore been lawfully issued by the General Land Office of the State of Texas to the said C. C. S. D. & R. G. N. G. R. R. Co., each for six hundred and forty acres of land; that plaintiffs are subrogated to all the rights of the said original owners of said certificates, held or owned by them under and by virtue of said last above mentioned application, file and entry, and that at the time of said last mentioned file and entry of said ten certificates the owners thereof designated and directed that a like quantity of land, within the same boundaries and in alternate sections, be surveyed for the State; and that thereafter, and within the time prescribed by law, the owners of said ten certificates caused surveys of the lands designated and

Exhibit "D."

NOTE: Black lines indicate C.
C.S.D. & R.G.N.G. R.R. Co.
Dotted lines indicate Texas Mexican Ry. Co.
SCALE: 1 inch equals 1000 yards.

applied for to be made, and the field notes thereof, together with said certificates, to be returned to and filed in the General Land Office of the State of Texas, and then and there as required by law deposited in said Land Office all fees due unto the State for such filing.

"Sixteenth: That the paper marked exhibit 'C,' hereto attached and made a part of this agreement, is a true and correct copy of said

Exhibit "E."

application, entry and file of said last above numbered ten certificates as entered in the surveyor's office in Hidalgo County, 24th day of June, 1882, and that the map hereto attached and marked exhibit 'D' and made a part hereof, shows the location on the ground of plaintiff's and defendant's conflicting locations; and that the field notes of the several surveys set out in paragraph L of this agreement are the field notes mentioned in the last preceding paragraph as having been returned, together with the certificates themselves, to the Commissioner of the General Land Office within the time prescribed by law; and that the several sections embraced within the black lines on the attached map marked exhibit 'D' are the surveys made by virtue of said certificates numbered 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, and are embraced within the field notes aforesaid, and are the identical ten sections of land in controversy in this suit as described in plaintiff's original petition; and the sketch made a part hereof, marked exhibit 'E' shows the metes and bounds (in red lines), called for by metes and bounds, if platted from N. E. corner of La Noria de Tio Ayala grant, in the entry and application made a part hereof, marked exhibit 'A,' and also the surveys of defendant by virtue of entry and application, marked exhibit 'B.'

"Exhibit 'C,' above referred to, with the endorsements thereon, is as follows:

" 'The State of Texas, County of Hidalgo.
" 'To the County Surveyor, Mr. Andres Salinas.
" 'Sir: By virtue of (10) Ten Land Scrip issued to Corpus Christi, San Diego and Rio Grande Narrow Gauge Railroad Company by W. C. Walsh, Com'r Gen'l Land Office, March 15, 1881, and numbered consecutively 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1134 and 1135, for (640) six hundred and forty acres of land each, and herewith deposited, you will survey or cause to be surveyed by virtue of this application or file and the aforesaid and numbered scrip (12,800) twelve thousand eight hundred acres of land of the public domain of and in the county of Hidalgo, within the following bounds: To begin at a point on the east b'dy of a grant known as La Noria de Tio Ayala granted to Estevan Martinez where the south b'dy line of a grant known as San Antonio del Encinal intersects the same, or if prolonged west would intersect the same. Thence south with E. b'dy of said grant (4) four miles. Thence east (5) five miles. Thence north (4) four miles to intersect the south b'dy of San Antonio del Encinal, and thence west (5) five miles to the place of beginning. The foregoing applied for surveys to be made as indicated by the following plat or sketch:

"'This entry is made to cover the same area embraced in an entry made for owners by John J. Dixon the 24th day of June, A. D. 1881, no more no less, and intended as then stated to embrace area for ten scrip and their alternates in the angle formed by the south b'dy of the grant known as San Antonio del Encinal and the east b'dy line of the grant known as La Noria de Tio Ayala:

" 'Hidalgo, Hidalgo County, Texas, June 24, 1882.
" 'McCampbell & Givens, by John J. Dixon, Agt.

" 'Endorsed: Application No. 31 for location of 10 certificates of 640 each made by J. J. Dicks for owner. Filed for record this 24th day of June, A. D. 1882. Andres Salinas, Surveyor, by J. S. Dougherty, Deputy. Recorded on pages 43 and 44, Book "A" of Applications.

" 'To go with field notes' (notation in pencil).

" 'File in L. O. with field notes' (notation in pencil).

" 'File 2875 San Pat. Scrip C. C. S. D. & R. G. N. G. R. R. Co. Application filed May 9/'83. D. N. Robinson, Chf. Clk.'—and is certified by the Commissioner of the General Land Office as being a true and correct copy of the original, together with all endorsements on file in his office.

"The maps hereto attached are exhibits 'D' and 'E,' and exhibit 'A' is the original file and entry copied in the sixth paragraph of the agreed statement of facts.

"Exhibit 'B,' referred to in the eleventh paragraph of the agreed statement of facts, together with the endorsements thereon, is a copy of the application and file of the Texas & Mexican R. R. Co., and is as follows:

" 'Application No. 23.—Application of the Texas-Mexican R. R. Company for location of 22 land certificates in Hidalgo County. Filed for record Sept. 19, 1881.  ............Surveyor.'

" 'The State of Texas, county of Hidalgo.
" 'To the County Surveyor of Hidalgo County.
" 'Sir:  By virtue of (22) twenty-two land certificates issued to the Texas-Mexican R. R. Co., formerly the Corpus Christi, San Diego and Rio Grande N. G. R. R. Co., by W. C. Walsh, Commissioner of the General Land Office, July 22, 1881, and numbered consecutively 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, for 640 acres each and herewith deposited, you will survey or cause to be surveyed by reason of this application and entry (28,160) twenty-eight thousand one hundred and sixty acres of land in the county of Hidalgo within the following bounds, to wit: Surveys to begin at the S. E. cor. of a grant called El Lucero, original grantee,. Antonio Elizondo.  Thence W. with its S. b'dy 1231 vs. to S. E. cor. of the Alameda.  Thence S. 900 vs.  Thence E. on N. b'dy of Santa Quiteria grant, 10,911 varas. Thence N. 7600 vs.  Thence E. 5700 vs. or to the W. line of a grant called Los Finados.  Thence N. 4900 vs. to S. b'dy of a grant called San Antonio del Encinal.  Thence W. 15,380 vs. to a corner of Las Noria de Tio Ayala.  Thence S. 7800 vs. to the N. W. cor. of file No. 17 for A. J. Leo..  Thence E. 1900 vs. S. 3800 vs. to the place of beginning.  The object of this survey is to embrace all the public lands not legally appropriated betwen the grants of El Lucero, Las Noria on the west, and San Antonio del Encinal on the north, Los Finados on the east, and on the south by Santa Quiteria and El Alazan.

" 'J. C. Eivet, Agent for Owners.'
" 'Hidalgo, Hidalgo Co., Sept. 19, 1881.

" 'I, Andres Salinas, surveyor of Hidalgo County, do hereby certify that the foregoing application of J. C. Eivet, agent for owners, for location of 22 land certificates issued to the Texas Mexican R. R. Co. for 28,160 acres of land, was duly recorded in Book "A," page 23, on the same day.  To testify which, witness my hand this 19th day of Sept., 1881, at Hidalgo, Texas.

" 'Andres Salinas, Sur., H. Co., Tex.'

" 'The State of Texas, county of Hidalgo.
" 'I, W. P. Daugherty, surveyor in and for Hidalgo County, hereby certify that the above and foregoing is a true and correct copy of application No. 23 with its certificate of record as appears of record in my office in Book "A" of Applicaions and Entries for Surveys, &c., on page 33.  To certify which, witness my hand at Hidalgo this 15th day of May, 1884.

" 'Wm. P. Daugherty, Surveyor H. Co., Tex,'

"Endorsed: 'File 2673.  San Patricio Scrip.  Tex. Mex. Ry. Co, Application.  Filed May 28/'84.  D. N. Robinson, Chf. Clk.'—and is duly certified to by the Commissioner of the General Land Office."

While the case was tried on the agreed statement of facts hereinbefore copied, and though there was no other evidence introduced, the trial judge filed his conclusions of fact. Only such of his conclusions as are attacked by assignments of error which we shall consider will be set forth. Such of them are as follows:

"3. That on the 24th day of June, 1881, plaintiff's vendors filed in the office of the county surveyor of Hidalgo County, Texas, ten valid land certificates, numbered 1146 to 1155 inclusive, for 640 acres each, issued March 15, A. D. 1881, by the Commissioner of the General Land Office of the State of Texas, to the Corpus Christi, San Diego & Rio Grande Narrow Gauge Railroad Company; and that on the same day plaintiff's said vendors filed with said surveyor their application for a survey of 12,800 acres of land within Hidalgo County, Texas, to cover any vacant land then situated in the angle made by the east boundary line of a grant known as La Noria de Tio Ayala and the south boundary line of a grant known as San Antonio del Encinal, not to conflict, however, with either of said grants or with any other valid grant or survey."

"11. That on the 24th day of June, 1882, the then owners of the said certificates 1146 to 1155 inclusive, and of said certificates 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, caused the same to be lifted or floated from the locality whereon same had been located according to their original files and entries of June 24, 1881, and re-entered the same for survey in Hidalgo County in the office of the surveyor thereof, and in their said entry and application the then owners of said certificates directed that certificates numbered 1146 to 1155 inclusive, which, under the application of June 24, 1881, had been applied to lands lying within the angle formed by the south line of the San Antonio del Encinal and La Noria de Tio Ayala, should be located on lands lying to the west of the two grants known as La Noria de Tio Ayala and El Lucero, and that the ten certificates numbered 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, which, by their original file and entry of June 24, 1881, had been applied to lands lying west of the La Noria de Tio Ayala and El Lucero grants, should be applied to and cover and embrace a sufficient amount of vacant land lying to the east of the grant known as La Noria de Tio Ayala and to the south of the grant known as San Antonio del Encinal, and within the angle formed by the east line of the first and the south line of the second, within a rectangle of four miles north and south and five miles east and west, sufficient to include ten sections of 640 acres each for locators, and a like quantity for the school fund, alternately; and that the lands covered by said application and entry of June 24, 1882, under certificates 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, and the field notes thereof, as set out in the subdivisions A, B, C, D, E, F, G, H, I and J, of paragraph 1 of the agreed statement of facts, are the lands involved in this litigation."

"17. That the lands sought to be located and intended to be located by plaintiff's vendors in the file and entry and application of June 24, 1881, and the lands actually located by plaintiff's vendors under their application of June 24, 1882, are the same lands."

"18. That it was not intended by plaintiff's vendors in their application to locate and in their file and entry of June 24, 1881, any land other than vacant lands situated within the angle formed by the south line of the grant known as the San Antonio del Encinal and the east line of the grant known as the La Noria de Tio Ayala, and within a rectangle of practically four miles south and five miles east, to begin and beginning at a point where the south line of the San Antonio del Encinal intersects the east line of La Noria de Tio Ayala, and running south from said point four miles, and thence east five miles, and thence north four miles to the south line of said San Antonio del Encinal, and thence following said south line of San Antonio del Encinal west five miles to its intersection with said La Noria de Tio Ayala grant."

"19. That defendant, in making its application for survey and file and entry of September 19, 1881, knew or ought to have known that the territory and vacant land within the above described metes and bounds, that is, in the angle formed by the south line of the San Antonio del Encinal and the La Noria de Tio Ayala grants and within a rectangular form of four miles north and south and five miles east and west from a starting point at the intersection of the south line of the Encinal and the east line of the Tio Ayala, had been appropriated and segregated by the application and file of plaintiff's vendors of June 24, 1881, and that the call to begin at the northeast corner of the grant known as La Noria de Tio Ayala did not mislead the defendant."

"21. That the lands upon which the several locations of plaintiff's vendors and the defendant herein were made, and intended to be made, lie and are situated in a then vacancy in Hidalgo County, Texas, between the following named grants: said vacancy is bounded on the north by the south line of a grant known as San Antonio del Encinal in the name of Jose Antonio Leal de Leon, original grantee; and on the south by two grants, the Santa Quiteria, in the name of Ramon G. Guerra, original grantee, and El Alazan, in the name of Teodoro Garza, original grantee; and on the west by two grants, La Noria de Tio Ayala, in the name of Esteban Martinez, original grantee, and El Lucero, in the name of Antonio Elizondo, original grantee; and on the east by a grant known as Los Finados, in the name of Juan de la Garza, original grantee, embracing within said metes and bounds 50,000 acres more or less."

"23. That the black lines on exhibit 'D' are intended to indicate and do indicate and show the actual location on the ground of the ten certificates numbers 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, and their alternates, and that such locations on the ground are covered by and embraced in the application of plaintiff's vendors dated June 24, 1881, and June 24, 1882; and that the red (dotted) lines on said map and exhibit are intended to indicate and do indicate the conflict between plaintiff's and defendant's locations."

"27. That the parties under whom the plaintiff herein claims and to whose rights he is subrogated, on June 24, 1882, refiled and reentered for survey in the office of the proper surveyor of Hidalgo County, Texas, the ten land certificates numbered 1126, 1127, 1128,

1129, 1130, 1131, 1132, 1133, 1135 and 1136, issued as aforesaid to the vendors of plaintiff by the Commissioner of the General Land Office of the State of Texas on March 15, 1881, with their written application in due form of law requesting and designating that same be applied to and that the proper surveys be made thereunder, covering and embracing practically the lands covered by their application of June 24, 1881, and substantially the lands involved in this litigation."

The conclusions of law filed by him are as follows:

"1. That the call to begin at the N. E. corner of the grant known as La Noria de Tio Ayala, in the application of plaintiff's vendors for the location of certificates 1146 to 1155 inclusive, made on June 24, 1881, is controlled and limited by the plain intention of the locators as expressed in the other parts of their said application, and that said call, being a patent ambiguity and irreconcilable with the other designations of the land sought to be appropriated, should be ignored.

"2. And that, so construed, the true beginning corner of said intended location of said ten certificates, as made on June 24, 1881, by the parties under whom plaintiff claims, was and is at a point where the south line of the grant known as the San Antonio del Encinal projected west, intersects the grant known as the La Noria de Tio Ayalá, and that the lands thereby appropriated is embraced in a rectangle of four miles north and south and five miles east and west, run out from said beginning point.

"3. That said application, file and entry of said ten certificates, 1145 to 1156 inclusive, as made on June 24, 1881, by the parties under whom the plaintiff claims herein, was and is legally sufficient to appropriate and segregate from the public domain the vacant land within said rectangle, and a sufficient quantity thereof to satisfy said ten certificates for locators and a like quantity for the State, and also sufficient to put defendant and all other persons on notice of the fact that said scope of territory had been legally appropriated by plaintiff's vendors under their said file and entry.

"4. That by reason of the file and entry aforesaid of the ten certificates aforesaid upon the lands described therein, to wit: 12,800 acres in the angle formed by the south line of the San Antonio del Encinal and the east line of La Noria de Tio Ayala, within a rectangle of four miles north and south by five miles east and west, beginning and running south from said true beginning corner, severed said lands from the general mass of the public domain for a period of twelve months from the date of said location, file and entry of June 24, 1881, and that during said period same was not subject to location by any other person.

"5. That defendant, the Texas Mexican Railroad Company, being charged with notice that said 12,800 acres, within the territory aforesaid, had been legally appropriated to the ten certificates numbered 1145 to 1156 inclusive, belonging to the parties under whom the plaintiff herein claims under their said application, file and entry of June 24, 1881, its location, file and entry of its 22 certificates, of date September 19, 1881, was and is void as to the plaintiff herein and the parties under whom he claims as to the lands involved in this suit.

"6. That the re-location, re-entry and re-filing of the vendors of the plaintiff herein of the same land, under and by virtue of their application of June 24, 1882, under and by virtue of said certificates numbered 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1135 and 1136, was and is a valid perpetuation of the rights secured to said original locators of said lands by virtue of said application, file and entry of June 24, 881, and was and is a valid re-appropriation of said lands.

"7. That defendant's entry and attempted location of September 19, 1881, having been made prior to the lapse of twelve months after said entry and location of plaintiff's vendors on June 24, 1881, with full knowledge as to the scope and effect of said original entry and file, same was and is likewise void and of no effect as to said re-entry and relocation of plaintiff's vendors of date June 24, 1882.

"8. That during a period of twelve months from and after a valid entry and location of vacant public land the location or attempted appropriation of the same land by another party, with notice of such prior appropriation, is void both as against the first location, as well as against any re-location which the first locator may make by virtue of any unsatisfied valid land certificates.

"9. Therefore, that the locations sought to be made by the defendant on September 19, 1881, being before the expiration of twelve months after the original location of said land by plaintiff's vendors, and in which said original locators could have had the same surveyed and the field notes thereof returned to the Land Office, the action of the surveyor of Hidalgo County, Texas, in receiving said application of defendant, in so far as same covered the land herein involved, acted without authority of law, and that said attempted locations and any surveys made thereunder and any patents issued thereon were and are void as to said original location of plaintiff's vendors or their subsequent re-location of June 24, 1882.

"10. That after twelve months from the date of the original file and entry of the original plaintiffs herein and under whom the present plaintiff holds and claims, no surveys having been made and no return of either field notes or certificates to the Land Office, the land covered by said application and entry of June 24, 1881, then and thereby became again subject to location by plaintiff's vendors or any other person, and that the prompt re-location of the same land by plaintiff's vendors by and under other valid land certificates on June 24, 1882, by and under a proper application and file, was and is a valid re-appropriation of said lands, and that as to such re-appropriation thereof the attempted location thereof by the defendant on September 19, 1881, is void.

"11. That a genuine land certificate can be said to be satisfied only when the obligation imposed by it is discharged in the manner contemplated when it was issued, and that this does not occur until the quantity of land for which it is issued has been secured to its owner, and that the inhibition of article 4134 of the Revised Civil Statutes of 1895, making it unlawful for the county surveyor to permit the holder of any land certificate to 'lift or float the same,' does not and was not intended to destroy the 'efficacy of a valid land cer-

tificate,' but was simply a legislative rule of action prescribed for the surveyors of Texas, and that it was never intended by the Legislature of this State, in making said provision, to announce the doctrine 'that a valid land certificate, once located, could never thereafter give right and power to thereby appropriate and locate other lands,' when, as in this case, the first location became ineffective by reason of a failure to have surveys made and the field notes thereof returned to the Land Office of the State of Texas within the time and in the manner otherwise required by law.

"12. That the lifting and floating of the several sets of certificates of the plaintiff's vendors, as shown in the agreed statement of facts and in the findings of fact by the court, did not and does not affect or destroy their validity, and that the fact that same were once planted upon a given scope of vacant land and subsequently lifted or floated therefrom and re-planted or re-located upon other and different lands, did not and does not affect either the validity of said certificates or any location made by virtue thereof.

"12½. That plaintiff's vendors, the original plaintiffs in this suit, by reason of the steps taken by them, were, and are now, entitled to patents from the State of Texas for their said ten sections of land.

"13. That in view of the foregoing findings of fact and conclusions of law, as a final conclusion the court holds that plaintiff, as assignee and owner of all the rights of the original locators and plaintiffs herein, is the equitable owner of the ten sections of land described in subdivisions A, B, C, D, E, F, G, H, I and J, of paragraph numbered 1, of the agreed statement of facts, and that he is entitled to recover the same, and to his writ of possession therefor, and for a judgment for costs, but not having brought his action in four years from the date of the issuance of the patents to the defendant, he is not entitled to any further relief, but must hold his said lands clouded by said patents. And it is so ordered, adjudged and decreed. To all of which findings of fact, conclusions of law and judgment thereon rendered, defendant in open court excepts, as heretofore noted in the judgment."

*Conclusions of law.*—The first assignment of error complains that the court erred in the third conclusion of fact. The proposition asserted under the assignment is:

"A locator of a land certificate under the laws of Texas was required to make an entry thereof or application for survey in which the land desired is described with sufficient certainty to apprise the surveyor what particular land he is required to survey, and where such application describes the land by metes and bounds the applicant must be held to have segregated such land and none other from the public domain, and a general statement of the locator as to what he intended must yield to the particular description of the land desired."

It will be observed from the statement of the agreed facts upon which the case was tried that the application made on June 24, 1881, which is set out in the seventh paragraph of the agreement, is for the surveyor to survey 12,800 acres within the following boundaries, viz.: "To begin at the northeast corner of a grant known as La Noria de Tio Ayala, granted to Esteban Martinez, and thence south four miles,

east five miles, north four miles and west five miles," and that the finding complained of is that plaintiff's vendors applied for a survey "to cover any vacant land then situated in the angle made by the east boundary line of a grant known as La Noria de Tio Ayala, and the south boundary line of a grant known as San Antonio del Encinal, not to conflict, however, with either of said grants or other valid survey."

As we understand the law, when a case is submitted by the parties under an agreed statement of facts in accordance with article 1293, Revised Statutes of 1895, it is that, in the absence of some agreement to the contrary, the court is confined to the facts contained in the statement, and can only declare the law arising from such facts, and that a finding of other different facts is beyond its province. True, when the statement agreed upon embraces a written instrument, it is the duty of the court to construe the instrument, if it be open to construction, but its construction in such an instance would be a matter of law rather than one of fact, in which the ordinary rules of construction should govern. Therefore it seems to us that it was error in the court to make such additional finding of fact.

But should the finding be regarded as a matter of law, we think that it violates the principle of law enunciated in the proposition, which is evidently correct. (Winder v. Williams, 23 Texas, 601.) It is a general rule that, when land is described by clear and distinct metes and bounds, from which the boundaries can be readily ascertained, such description will control any general words of description added thereto. 5 Cyc., sec. 8, p. 926. The effect of this finding by the trial court, in its bearing upon the ultimate decision of the case, will be made apparent when we come to consider other assignments. It is sufficient here to observe that, had the plaintiff's vendors, in view of this description, sought to mandamus the surveyor to make the survey of the very land which was surveyed under a subsequent file and designation—that is, the land sued for—it is evident, from the principle enunciated in Winder v. Williams, that they would have failed in their action.

2. The second assignment of error complains of the eleventh finding of fact by the trial court. It is unnecessary to reiterate such finding of fact, which is hereinbefore set out. The proposition advanced under the assignment is as follows:

"Where a case is submitted to the court on an agreed statement of facts under the provisions of article 1293, Revised Statutes, the court has no authority to make a finding as to a fact which is not shown to have been a fact agreed upon between the parties, and there being no agreement that certificates 1146 to 1155, inclusive, were ever floated and re-entered elsewhere, the court was in error in making a finding as to such fact."

We anticipated this proposition in what was said preliminary to the disposition of the first assignment of error. We believe the proposition embodied a sound principle of law, and that the assignment should be sustained.

3. The third and fourth assignments complain respectively of the seventeenth and eighteenth findings of fact of the trial court. Such

findings are likewise hereinbefore copied and will not be repeated: The proposition advanced under these two assignments is:

"The location of June 24, 1881, described a rectangle, the northwest corner of which was the northeast corner of La Noria de Tio Ayala grant, and the location of June 24, 1882, described a rectangle the northwest corner of which was on the east boundary line of La Noria de Tio Ayala grant four or five miles south from the northeast corner of said grant, and such subsequent location, while it sought to appropriate the same quantity of land, the area described did not coincide with or cover the land embraced in said former location, and the declared intention of the locator in his first application can not control the description of the land therein given by metes and bounds."

In view of the eleventh, twelfth and thirteenth paragraphs of the agreed statements of facts, the proposition stated is evidently correct. (Raoul v. Terrell, 99 Texas, 157.)   Our reasons for so holding will be fully exposed in considering subsequent assignments.

4. The fifth and sixth assignments of error complain respectively of the nineteenth and twentieth findings of fact by the trial court. The propositions advanced under them are:

(1) "The application of June 24, 1881, did not furnish notice which precluded the location and survey of lands outside of the rectangle described in the said application; and the application of September 19, 1881, in so far as it did not conflict with the lands contained in the rectangle before mentioned, was a good and valid location, and the court could not ignore the particular description by metes and bounds in the application of June 24, 1881, to the prejudice of that of September 19, 1881."

(2) "If the description by metes and bounds of the lands applied for in the application of June 24, 1881, is eliminated, then such application must be regarded as an application in gross, and the application of September 19, 1881, was not in conflict therewith—the purpose of the latter location being to appropriate all the public lands not legally appropriated within a tract bounded on the north by San Antonio del Encinal, on the west by La Noria de Tio Ayala and El Lucero, on the south by Santa Quiteria and El Alazan, and on the east by Los Finados."

(3) "The locator must be held to have intended to appropriate the lands embraced within the metes and bounds mentioned in his application, and no intention to the contrary, although expressed in the application, can be regarded to the prejudice of a subsequent locator whose application calls for land not embraced within the metes and bounds set out in the prior application.   Such prior locator is estopped under the circumstances, and can not be heard to say he did not seek to appropriate the lands described by him by metes and bounds, but intended to appropriate other lands."

We believe the entire case hinges upon the correctness of these propositions.   We think, in their application to the agreed statement of facts that they are correct.   When the Constitution of 1869 was in force, holders of unlocated land certificates, when the time approached

which would bar them, under section 4, article X, of that Constitution, if not surveyed and returned to the Land Office by the day fixed, it became the custom of the owners, in order to save them from being barred, to place them in the hands of surveyors, and with a designation of lands which had been before filed upon and surveyed by virtue of other certificates or grants owned by other parties, and, in many instances, on lands patented and occupied by the owners.

While the Constitution of 1875, by article XIV, section 2, revived all such certificates, it provided that all genuine land certificates then in existence should be surveyed and returned to the General Land Office within five years after its adoption, or be forever barred. And in order that all certificates should be barred after the lapse of such period, it provided that all genuine land certificates theretofore or thereafter issued should be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is in the county records or in the General Land Office, or when the appropriation is evidenced by the occupation of the owner or some person holding for him.

The law requires that an entry or application shall be in writing, dated and signed by the applicant. That it shall particularly describe the claim to be surveyed and all the land applied for; which entry or application, together with the land certificate, shall be filed in the office of the county or district surveyor in which the survey is situated; and where the claim to be surveyed shall remain until returned, together with the field notes, to the General Land Office. Sayles' Civ. Stats., art. 4131. It also provides that the survey shall be made by a copy of the entry or application, and strictly in accordance with the same; and hereafter no survey shall be made until after entry or application, as provided in the preceding article. Sayles' Civ. Stats., art. 4133. The next article then provides that "every entry or application, made according to the two preceding articles, shall confer a preference right of location or survey over any subsequent entry or application."

The next two articles are as follows:

"Article 4134. It shall not be lawful for such surveyor to allow the holder of any land certificate or scrip, or other legal evidence of title to land, to lift or float the same after entry, location, file or survey, when the same is not made upon land previously appropriated. But when a conflict of entries, files, locations or surveys occur, upon a proper showing of the facts, which may be by the certificate of one of his deputies or from his knowledge, he shall allow the party having his entry, file, location or survey of subsequent date, to lift so much thereof as shall be affected by such conflict."

"Art. 4135. Whenever an entry is made by virtue of a genuine certificate upon any land which appears to be appropriated, deeded or patented by the books of the proper surveyor's office or records of the County Court or General Land Office, the party making such entry shall abide by the same. And in the event that judgment final shall be rendered against the right of the party making such entry to hold

such land, he shall not have the right to lift or re-enter said certificate. But the same shall be forfeited, and so declared to be by the judgment of the court."

It is thus seen that the present Constitution requires land certificates should be located, surveyed or patented only upon vacant and unappropriated public domain, and expressly inhibits their location upon any land titled or equitably owned under color of title from the sovereignty; that the law inhibits any survey being made until after an entry or application as provided by article 4131, Sayles' Civil Statutes; that the surveyor is prohibited from allowing the holder of the certificate to lift or float the same when not made upon land previously appropriated, unless there be a conflict of entries, files, locations or surveys, in which event he may allow the party having the subsequent entry to lift so much of the certificate as was affected by such conflict; that when an entry is made upon land that appears to be appropriated, deeded or patented from the books of the proper surveyor's office or records of the County Court or General Land Office, the party making the entry has to abide by it, and can not lift the certificate, but forfeits the same.

If, then, the location of the certificates by plaintiff's vendors, made on June 24, 1881, is, within the meaning of article 4134 above copied, in conflict with entries, files and locations of other surveys, only so much thereof could be lifted as was affected and located elsewhere; but if any part was upon land which appeared to be appropriated, deeded or patented, in the manner set out in article 4135, they had to abide by the same, and so much of their location as was affected by the conflict could not be lifted, but became forfeited. It would, therefore, seem that so much of the entry made on that date as was not in conflict with prior locations was valid, and was confined to such of the vacant, unappropriated public domain as lay within the bounds of the description of the application of June 24, 1881. If this be so, then the preference right of location given by article 4133 of Sayles' Civil Statutes to plaintiff's vendors, over a subsequent entry or application, did not extend to the land outside of the rectangle described in said application, but was confined to the vacant unappropriated public domain embraced in the description. Nor did such entry or application furnish notice which precluded the location and survey of lands outside of the rectangle described in said application. From which it follows that the application of September 19, 1881, by virtue of which the lands of the defendant were located and surveyed, in so far as it did not conflict with the lands contained in the rectangle, was a good and valid location. No other conclusion than this can be deduced from the agreed statement of facts and the law applicable thereto, without eliminating the description of metes and bounds of the lands described in the application of June 24, 1881. It seems to us that such an elimination would be purely arbitrary. But, suppose it should be made, then we can not perceive how the second proposition under these assignments can be escaped. In either event the plaintiff can have no predicate for basing his claim that the location of June 24, 1881, prevented the defendant from an entry or appropriation of the land involved in this suit until the expiration

of twelve months from said date of plaintiff's location, so as to establish that its relocation on June 24, 1882, had precedence over defendant's appropriation on September 19, 1881, of the land then described in its entry, and that such location was therefore void. See Raoul v. Terrell, 99 Texas, 157.

5. The seventh and eighth assignments, which complain respectively of the court's twenty-third and twenty-seventh findings of fact, are virtually disposed of in favor of the defendant in what we have held in regard to the preceding assignments of error.

6. The ninth assignment of error is: "The court erred in the second, third and fourth conclusions of law that, for the location of June 24, 1881, the call to begin at the N. E. corner of the grant known as La Noria de Tio Ayala should be ignored; that the true beginning corner of said intended location was and is at a point where the south line of the San Antonio del Encinal, projected west, intersects the La Noria de Tio Ayala, and that the lands appropriated by said location are embraced in a rectangle of four miles north and south, and five miles east and west, run out from said beginning point; and in not holding as a conclusion of law that the attempted designation of lands to be surveyed outside of the rectangle described in said application of June 24, 1881, was insufficient to put the defendant upon notice that the lands covered by its application of September 19, 1881, was not subject to location and survey at that time; and in not holding further, that the application of September 19, 1881, was a good and valid location of the lands in controversy."

The propositions asserted under this assignment are substantially the same as the two first advanced under the fifth and sixth assignments, and have already been upheld in disposing of those assignments, so we need consider them no further. However, it is a matter of remark that the conclusion of law here complained of is based upon the erroneous conclusions of fact, which was beyond the province of the trial court, the facts upon which the cause was tried having been agreed upon, to find; and that such conclusion of law can not be deduced from the agreed statement of facts.

7. The tenth assignment complains that "the court erred in the fifth conclusion of law in holding that the location by defendant, made on September 19, 1881, was void as to the land in controversy." The conclusion of law here complained of is also based upon erroneous conclusions of fact which the trial court had no right to find, and in disposing of the third, fourth, fifth and sixth assignments attacking such conclusions of fact, we have left no foundation for the conclusion of law in question to rest upon. It is remarked in Young v. O'Neal, 54 Texas, 544: "It assuredly was not contemplated that one who settled upon public lands for the purpose of acquiring a homestead thereon, while disregarding the provisions of law requiring the filing of his application and survey and return of the field notes within the limited time, should yet preserve a right to claim it, and to withhold the land from settlement and location by others indefinitely." We think the same principle is applicable in this case. See also Booth v. Upshur, 26 Texas, 64; Taylor v. Criswell, 4 Texas Civ. App., 106. Again, it is observed, in Snider v. Methvin, 60 Texas, 500: "It may

be said to be true, as a general rule, that where a law which creates, provides for, and upon which depends, a right, couples with the right, in the nature of things or by express terms, a requirement that certain acts shall be done to make the right complete, then the Legislature may prescribe a time within which such act must be done, or the incipient right becomes null and of no effect."

8. The eleventh assignment complains of the sixth conclusion of law, in holding that the application of June 24, 1882, was and is a perpetuation of the rights secured by the application, file and entry of June 24, 1881. Under the assignment these propositions are enunciated:

(1) "A locator of land certificates who has not caused a survey of the lands sought to be appropriated to be made within twelve months from the date of his file or entry, can not, after such period, claim any right under such file or entry; the location is void, and can not be the basis of any valid claim to said lands.

(2) "The certificates which had been located upon vacant and unappropriated public domain west of La Noria de Tio Ayala grant could not thereafter be lifted and re-located on other land, and the attempted re-location of such certificates on June 24, 1882, was illegal and void.

(3) "If any rights were acquired by re-location of certificates on June 24, 1882, such rights are not aided by the previous location on June 24, 1881, which had been abandoned, was void, and could not be the basis of any right or claim to land."

The effect of what has been said in disposing of the fifth, sixth, ninth and tenth assignments is to sustain the propositions and hold the assignment well taken.

9. The twelfth assignment of error is as follows: "The court erred in the seventh conclusion of law in holding the location of the defendant, made September 19, 1881, void and of no effect, there being no fact in the agreed statement showing that the lands located were not subject to location at the time the application was filed, nor that the application of June 24, 1881, covered the said lands at any time, nor on the 19th day of September, 1881, and in not holding as a conclusion of law that the location of September 19, 1881, was good and valid as to the lands in controversy." The propositions under it are:

(1) "It appearing from the agreed statement of facts that the application of June 24, 1881, segregated the land embraced within the rectangle therein described, and that the application of September 19, 1881, segregated other land, the latter application was good and valid, and not void, and the court should so hold as a conclusion of law.

(2) "If not an application for the land embraced in the rectangle so described, then the application of June 24, 1881, was for land in gross, and did not designate the particular part desired of the large body of land affected (sufficient to satisfy both locations), and the prior locator, not having taken any steps within twelve months to designate, by survey or otherwise, what particular part thereof he desired, the later location was valid and not void, and the court should so hold as a conclusion of law."

If what has been said in disposing of the preceding assignments is correct, it follows that the assignment should be sustained.

The effect of what we have held in disposing of the preceding assignments is to dispose of all the others in favor of the defendant, and to require a reversal of the judgment of the District Court and a rendition of judgment here in defendant's favor for the land in controversy, which is accordingly done.

*Reversed and rendered.*

Writ of error refused.