JOHN PARKER v. PORTIS AND WIFE.

Slaves purchased by an administrator with the funds of his intestate, are the property of the estate, held by him in trust for the distributees and heirs of the estate ; and this too, whether he be rightfully administrator or not.

Where a defendant in execution is in possession of slaves, as trustee for others, and such slaves are levied on, he has a right, and it is legally incumbent on him, to assert the claim on behalf of the beneficiaries in the trust, and to maintain the exemption of the property from execution.

Where the claimant of property taken in execution gave bond payable to the Sheriff instead of the plaintiff in execution, he was afterwards permitted to file a new bond.

Whether the community property is liable for the debts of the husband, contracted before the marriage, it is not necessary in this case to decide. If so liable, the community money, mixed with the trust fund in this case may be reached. But it can only be reached by a proceeding or a levy, to reach and dispose of that particular interest. It cannot be permitted, that a levy upon the entire trust estate, as community property, should be maintained, for the purpose of subjecting so inconsiderable a community interest mixed with the estate.

It would seem that where the facts are agreed on and the cause submitted to the Court as a case stated, the pleadings are not material.

Appeal from Austin. Execution in favor of John Parker against David Y. Portis ; levied on three slaves, Ky or Hezekiah, Crecy and Lidy ; the slaves claimed by Rebecca Portis, wife of David Y. Portis ; affidavit that the slaves were "her separate property and in nowise liable for the debts of David Y. Portis ; bond by claimant payable to the Sheriff ; answer by the claimant, answering with her husband,

1st. That the slaves were her separate property.

2d. That they were the common property of the defendants, acquired subsequent to their marriage, and therefore not liable for the debts of the husband contracted before the marriage.

Motion by the plaintiff in execution to dismiss the proceeding and order a *venditioni exponas* to sell the property, on the ground that the bond was insufficient, being payable to the Sheriff instead of the plaintiff in execution. Order of Court permitting claimant to confess defect in bond and file a new one; which was done. Issue formally joined whether the property was liable to the execution. Facts agreed to be as follows:

It is agreed that the judgment upon which the execution issued, which was levied on the property in controversy, was rendered in the District Court of Austin County, on the 23d day of October, 1849, in a suit (No. 210) of John Parker v. David Y. Portis *et al.* That said judgment was for $2,885 32, and was rendered on a note signed by said David Y. Portis, payable to said John Parker for the sum of two thousand dollars, payable two years after date, with interest from date, and dated the 9th day of April, 1844; and that the consideration for said note was part of a judgment which Parker, the plaintiff, obtained against David Y. Portis in the District Court of the United States for the Southern District of the State of Alabama, prior to the year 1840.

It is agreed that said David Y. Portis and Rebecca were intermarried on the 28th day of December, 1843; that the negroes in controversy were purchased since the intermarriage of said Portis and wife; that one John Cummings in his lifetime, to wit: on the 26th March, 1839, sold a tract of land claimed by him to one William P. Corbin, for six thousand dollars; that said John Cummings died in April, 1839; that at the April Term of the Probate Court of said Austin County, 1839, the said Rebecca, then sole and unmarried, obtained letters of administration on the estate of said John, deceased; that said sum of money not having been paid by said Corbin to said John, deceased, in his lifeiime, after his death, to wit: in October, 1840, the said Rebecca, as administratrix of said

John, deceased, sued said Corbin, and at the Fall Term of the District Court of Brazoria County, 1840, she obtained a judgment against said Corbin ; and after the intermarriage of said defendants, to wit: in August, 1845, they collected a portion of said money, and that the money then received from said Corbin, in part payment· for said tract of land, is the money which was paid for the negro in controversy, Ky or Hezekiah; that in May, 1847, they received another portion of said judgment against said Corbin, with which said girl Crecy was purchased, except fifty dollars for said Crecy, for which said Portis gave his note, which he has since paid, to C. Ennis, from whom he purchased her ; that the other negro in controversy, to wit: Lydia, was purchased by Joseph P. Portis in the State of South Carolina, in the month of February, 1848, with the proceeds of a draft, drawn by William P. Corbin, (being part payment of said tract of land sold to said Corbin,) on the firm ot Boykin & M'Crea, of the city of Mobile, in the State of Alabama ; that said draft was drawn by said Corbin in favor of said Rebecca Portis, and by her endorsed to said Joseph P., without consideration, to enable him to draw the money upon said draft, and that after said Joseph received the money for said draft, it was laid out by him in the purchase of said negro girl Lydia, and that said purchase was made under instructions from the said Rebecca, and that said girl was brought to this State by said Joseph P. and delivered to said Rebecca sometime in the month of May, 1848.

It is agreed that said negro Ky or Hezekiah was purchased by said Rebecca Portis on the 22d day of January, 1846, as appears by bill of sale, marked A, and part hereof, and that said girl Crecey was purchased by said Rebecca on the 6th day of July, 1847, as appears by bill of sale, B, part hereof, and that said girl Lydia was purchased for said Rebecca sometime in the month of February, 1848, and conveyed to her by bill of sale, and that all of said negroes were purchased with the proceeds of the sale of said tract of land sold by said John Cummings to said William P. Corbin, with the exception of

fifty dollars for Crecey as aforesaid ; that said John Cummings left no surviving wife or children or their descendants, and that he left as next of kin the said Rebecca, sister, and resident of the Republic of Texas, and Samuel Cummings, a resident of the State of Kentucky, and Thomas Cummings, a resident of the State of Indiana, his surving brothers, and Samuel Anthony Cummings a nephew and only child or descendant of William Cummings, a brother of said John, deceased, and that said William had died in September, 1828, in the province of Texas, and that said John had no other surviving brothers or sisters, or their descendants.   It is further admitted that said Portis and wife were, at the time of the levy upon said negroes, living on a place and having a farm, claimed by said Rebecca as her separate property, and that she claimed to have possession of them.   It is further admitted that there has not been any final settlement of the estate of John Cummings.

A jury being waived, and the cause being submitted to the Court upon the case stated, judgment was rendered in favor of the claimant.

*N. H. Munger*, for appellant.

*N. Holland and D. Y. Portis*, for appellees.

WHEELER, J.   The property levied on was purchased with money collected by the appellee, Mrs. Portis, as administratrix of the estate of John Cummings.   It was the money of the estate with which the property was bought and paid for.   It therefore was neither community property of the appellees, nor the separate property of Mrs. Portis ; but was property held by her in trust, for the distributees and heirs of the estate of John Cummings.   Though the titles were taken in the name of Mrs. Portis, and whether she was rightfully administratrix or not, still the property in her hands was trust property, held in trust for those interested in or entitled to receive the estate;

because purchased with their money.   And consequently, it was not subject to the plaintiff's execution.

Holding the property as trustee, the appellee had the right, and it was legally incumbent on her, to assert the claim on behalf of the beneficiaries in the trust, and to maintain the exemption of the property from the execution.   And where the fact was made legally to appear to the Court that the property was so held, the Court would not suffer the sale of it in satisfaction of the plaintiff's execution.

The issue made up by the parties presented, properly, the only material question arising upon the merits of the case; that is, whether the property was liable to sale upon the execution, or writ; and the Court very properly decided that it was not. The irregularity in giving the bond was amendable, (Sweeney v. Jarvis, 6 Tex. 36,) and is not now material, since the case has been decided rightly upon the merits.

Whether the community property is liable for the debts of the husband, contracted before the marriage, it is not necessary in this case to decide.   That question may be determined, in another case before the Court, between those parties.   If so liable, the community money mixed with the trust fund in this case, may be reached.   But it can only be reached by a proceeding or a levy, to reach and dispose of that particular interest.   It cannot be permitted, that a levy upon the entire trust estate, as community property, should be maintained, for the purpose of subjecting so inconsiderable a community interest mixed with the estate.   The judgment is affirmed.

Judgment affirmed.