L. L. EMERY v. J. C. LEAGUE ET AL.

Decided February 25, 1903.

**1.—Oil Lease Contract—Compliance—Vested Interest.**

An oil lease contract, although containing apt words of conveyance and reciting a small valuable consideration, which was actually paid, can not be held an absolute conveyance of the minerals underlying the land, and title to such minerals does not vest in the grantee by the mere execution of the instrument, where it is apparent, when the instrument is considered as a whole, that its real consideration was the prospecting and developing, with due diligence, of the land for oil and other minerals, and that this was the primary purpose of the grantors in the execution of the contract, which expressly provides that it shall remain in force and effect only so long as the grantees faithfully comply with the covenants and agreements undertaken to be performed. Such contract merely gives the grantee an option, and compliance with its provisions is necessary to secure a vested interest.

**2.—Same—Contract by Agent—Notice.**

Where the contract was made by a duly authorized agent, the principal was charged by law with notice of the agreement, and bound to the same diligence in its performance as if the contract had been executed by himself.

**3.—Same—Time for Compliance—Reasonable Time—Forfeiture.**

Where the grantee in such oil lease contract agreed as a part of his undertaking to secure a partition of the land mentioned therein, it was necessary, in order for him to retain his rights thereunder, to take steps for securing such partition within a reasonable time, and his failure, without excuse, to institute proceedings for partition for six months, during which two terms of the district court intervened, authorized a forfeiture of the contract on the ground that performance had not begun within a reasonable time.

Appeal from the District Court of Galveston. Tried below before Hon. William H. Stewart.

*L. A. Carleton,* for appellant.

*William B. Lockhart,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is a partition suit brought by J. C. League against the appellee Hugh Jackson and a number of other defendants to partition a tract of land in Galveston County. The appellant was a party defendant to this suit, plaintiff's petition alleging that he was asserting some interest or claim in the land sought to be partitioned. The defendant Hugh Jackson answered, asserting title to an undivided 11 8-10 acres of the land involved in the suit, and asked, as against the plaintiff and all the other defendants, that said interest be set aside to him. The defendant L. L. Emery answered, setting up a claim to all of the mineral rights in and under the land claimed by appellee Jackson, and averring that he had acquired said mineral rights under and by virtue of the following instrument executed by the vendor of said Jackson prior to his purchase of said land, and of which the said Jackson had notice at the time he purchased.

"State of Texas, County of Galveston. This deed and contract of lease executed and entered into this the 14th day of March, 1901, by

and between Nevile Montaut and wife Selestine, and F. Harrington and wife Matilda, hereinafter called party of the first part, and L. L. Emery, hereinafter called party of the second part, witnesseth: That whereas the said Nevill and Selestine Montaut and F. Harrington and wife, Matilda Harrington, party of the first part, being the owner of the hereinafter described property, and being desirious of having same prospected for minerals, coal, mineral waters, artesian waters, natural gas, petroleum and lubricating oils, and being desirious of having the mineral resources of said land fully investigated and developed, does hereby for and in consideration of the sum of ten dollars, paid by the said L. L. Emery, party of the second part, the receipt of which is hereby acknowledged, and in the further consideration of the covenants, agreements and stipulations hereinafter set forth and undertaken to be done and performed by the party of the second part, grant, demise and lease unto the said party of the second part, legal representatives, heirs, successors and assigns the following described property, to wit: Being our entire interests in and to the Montaut estate, and being fourteen acres, more or less, in said tract on the western portion of High Island, for the purpose only, however, of prospecting said property and premises for minerals of whatever kind or character, coal, mineral waters, natural gas, petroleum and lubricating oils, hereby giving and granting to the party of the second part the exclusive right and privilege to prospect said lands for the purpose of discovering any mineral deposit, coal mine, mineral spring, natural gas, petroleum or lubricating oils, by sinking thereon any shaft or shafts, or by boring thereon any well or wells or by doing any other act or thing on said premises necessary or in keeping with a thorough and complete investigation or prospect of the same for the purpose above enumerated, and hereby giving and granting to the party of the second part the sole and exclusive right and privilege of developing and operating any mine or deposit or mineral or mineral spring or well or artesian well or natural gas well or wells or mines, or petroleum lakes, deposits or wells or any source, lake or well of lubricating oil, which the party of the second part may discover on the above described land, and which, when so discovered, shall become the property of the second part, subject to the provision of this deed and contract. And the party of the second part, his legal represenatives, heirs, successors or assigns shall have the sole and exclusive right to go on and upon said premises at any and all times during the existence of this contract for the purposes above indicated, and to build thereon any railroad, tram road, and to move and erect thereon any and all kinds of machinery, buildings, warehouses, tanks, pipe line, shackle works, etc., which may be necessary or useful in prospecting and investigating said lands for minerals, coal, gases, oils, etc., and to operate, develop, manufacture, distill and conduct away the same when it shall have been discovered, for the purpose of putting same in a marketable condition and transporting it to a market. And the party of the second part, his legal representatives, heirs, successors, or assigns,

shall appropriate and convert to its own use and benefits the proceeds arising from the sale of any such mineral, coal, gases, or oils or the bi-products thereof, provided, however, the party of the second part, his legal representatives, heirs, successors or assigns shall pay and attorn to the party of the first part 12½ per cent of the gross crude output or yield resulting from the development or operation of any such mine, mineral spring, artesian well, gas or oil well or deposit, and the party of the second part shall pay the market value of said oil every thirty days. And further provided the party of the second part shall begin operations in good faith on the lands hereby leased for the purposes above indicated within six months after the final division setting apart of their respective shares, and said party of the second part shall have six months after said period of time aforesaid in which to prospect said land and to complete a well. And said party of the second part shall pay all damages if he interferes with the improvements or growing crops on said land.

"This deed and contract shall remain in force and effect between the respective parties hereto, their legal representatives, heirs, successors or assigns so long as the respective parties hereto comply faithfully and fully with the covenants, stipulations and agreements by each respectively undertaken to be done and performed; provided, however, it is distinctly understood and agreed that the party of the second part shall have the right to cease operations under this contract whenever it shall become manifest that it would be unprofitable not to do so, and if the party of the second part fails to find oil, he shall pull the pipe up to the artesian water supply and said pipe shall become the property of the party of the first part.

"In testimony whereof we have hereunto set our hands, this the 14th day of March, A. D. 1901.

"N. MONTAUT.

her
"SELESTINE + MONTAUT.
mark

"F. HARRINGTON.

"M. HARRINGTON, Party of the First Part.

"L. L. EMERY, Party of the Second Part."

This answer further avers that as a part of said agreement and contract above set out he, the said Emery, agreed to secure a partition of said property and have same set aside to his grantors free of cost to them. This agreement, which is attached to said answer as an exhibit, is as follows:

"The State of Texas, County of Galveston. This memorandum witnesseth, that I, L. L. Emery, for and in consideration of the sum of $1 in hand paid by F. Harrington and Nevill Montaut, have this day contracted and agreed and do by these presents contract and agree to

secure to F. Harrington and wife and Nevill Montaut, a division of the property left to them by their parents, Mr. and Mrs. John Montaut, setting apart to them their respective shares of said property as aforesaid either by suit at law or otherwise, free of costs to the said F. Harrington and wife and Nevill Montaut, respectively.

"In testimony whereof I have hereunto set my hand this the 14th day of March, 1901.

"L. L. EMERY, by E. H. OSTROM.

"Witnessed in presence of:   A. J. Johnson, P. G. McNeil."

This answer further avers that the defendant Jackson is the owner of the fee in the land covered by said contract, and asks that said interest in the land be set aside to said Jackson subject to the rights of this defendant under said contract, and that the proportionate cost of making said partition chargeable to the interest in said land covered by said contract be adjudged against this defendant.

To this answer the defendant Jackson replied by supplemental answer in which he admits the execution of the contract set out in the answer of said Emery, and that the interest in the land claimed by him is covered by said contract and was purchased by him with notice of same, but he avers that said contract is void for the following reasons: First. For want of mutuality. Second. For failure of consideration, in that the real consideration for same was the promise and agreement of said Emery to procure without delay and free of cost to his vendors a partition of said land, and to explore, prospect and develop said land for oils and other minerals, and that in the performance of said agreements and undertakings the said Emery has wholly failed. Third. Because by the terms of said contract it is provided that same shall be effective only so long as the parties thereto should faithfully comply with the covenants and agreements therein undertaken to be performed, and that said Emery having never performed or offered to perform any of his covenants or agreements prior to the filing herein by this defendant on the 7th day of October, 1901, of his original cross-bill seeking a cancellation of said contract, this defendant, by the filing of said cross-bill, elected to declare said contract void, and the same is no longer of binding force and effect. Fourth. Because said Emery, by his unreasonable delay in procuring or attempting to procure a partition of said land, forfeited his rights, if any he had under said contract, and can not now be heard to assert same.

Upon each and all of the above grounds the defendant Jackson asked for a cancellation of said contract. The trial in the court below without a jury resulted in a judgment in favor of the defendant Jackson for the land claimed by him against plaintiff and all of the defendants, and canceling the lease contract under which the defendant Emery claimed. From this judgment the defendant Emery alone prosecutes this appeal.

The facts disclosed by the record which are material in the deter-

mination of the issues presented on this appeal are as follows: The land adjudged to the appellee Hugh Jackson by the court below was purchased by him on the 9th day of May, 1901, from J. C. League, who had purchased same from Neville and Selestine Montaut and F. Harrington and Matilda Harrington on April 29, 1901. This land was included in the lease contract executed by and between the parties above named and the appellant on March 14, 1901, and appellee Jackson purchased same with notice of said contract. After the execution of said contract the appellant did nothing towards procuring a partition of the land belonging to the Montaut estate and having the interest of Nevill Montaut and Mrs. Harrington set apart to them. He testified that he did not know that his agent Ostrom, who procured the contract for him, had bound him to secure a partition of the land until he was so informed by the appellee about the 1st of October, 1901, after he had filed his original answer in this suit, and that he then told appellee that he would abide by his contract in this regard and would pay appellee's portion of the costs of the partition. Appellee, in this conversation with the appellant, informed him that he, appellee, did not regard the lease contract as binding upon him, and would fight any claim set up thereunder by the appellant. The appellant was never in possession of any portion of the land, and never made any exploration thereon for oil or minerals, nor made any preparations for prospecting or developing same.

This suit was filed on July 3, 1901, by J. C. League, who was the owner of an undivided interest in the tract of land of which the land in controversy is a part. Appellant's original answer consisted of a general demurrer and general denial. This answer was filed on September 30, 1901. The amended answer in which appellant set up his contract and for the first time asked that the land be partitioned and agreed to pay the proportionate costs of such partition chargeable to that portion of the land covered by the lease contract, was filed on February 21, 1902. The suit was continued from time to time by agreement, and was not tried until March 3, 1902. Appellant actually paid $40 as a consideration for the lease contract; $25 to the Harringtons and $15 to Montaut. No demand was ever made upon appellant by his lessors that he should begin operations under the contract, nor that he should proceed to secure a partition of the land.

The agreement to secure a partition of the land was made by a duly authorized agent of appellant at the time of the execution of the lease contract and was a part of same, and it is agreed that appellant was charged with notice of the terms of said agreement. At the time the lease contract was made the lands adjoining that covered by said contract were being prospected for oil and wells were being sunk thereon. If the land covered by the contract should prove not to be oil land, the amount paid by appellant for the rights conveyed by the contract was equal to the value of the land, but should oil be discovered on the land, its value would be increased to as much as $3000 per acre.

Under appropriate assignments of error the appellant contends that

the trial court erred in adjudging that the contract under which appellant claims is void and ordering same canceled, for the following reasons: (1) Because said instrument, being supported by a valuable consideration, is an executed conveyance to appellant of an interest in the land therein described and the minerals underlying said land, and appellant thereby obtained a vested right in said property. (2) Because appellant could not be deprived of his title to the property conveyed to him by said instrument on account of his failure to promptly procure a partition of said land, the contract not providing that such failure should work a forfeiture of the grant. (3) Because the evidence shows that the appellant acted with reasonable promptness in the matter of procuring said partition. (4) Because no demand having been made of appellant to perform his agreement in the matter of the partition of said land, his failure to perform same did not work a forfeiture of said contract.

While the instrument under which appellant claims contains apt words of conveyance and recites a valuable consideration which the evidence shows was actually paid, it can not be held to be an absolute conveyance of the minerals underlying the land therein described, and the title to such minerals was not vested in appellant by the execution of said instrument. The whole instrument must be construed together and, when so considered, it is apparent that the real consideration therefor was the prospecting and developing with due diligence, the land therein described, for oil and other minerals. This was clearly the primary purpose of the grantors in the execution of said contract, and it is expressly provided in the instrument that the same shall remain in force and effect only so long as the parties thereto faithfully comply with the covenants and agreements undertaken to be performed. It is well settled that contracts of this kind do not vest an absolute title in the grantee, but only confer upon him the right to acquire title by a compliance with the terms of the contract and the discovery and development of oils or other minerals mentioned in such contract. In other words, such instruments are not conveyances of title, but are in the nature of options, and can only ripen into a title by a compliance with their terms on the part of the grantee and the accomplishment of the purpose for which they were executed. The grantee under such instrument, so long as he continued diligently to comply with his agreement to prospect and explore the land for minerals, could not be deprived of his right to acquire title to such minerals by their discovery and development, but no title in such minerals would vest until their discovery, and unless such grantee begins the performance of his part of the contract within a reasonable time, the grantor can consider the contract abandoned. Oil Co. v. Teel, 67 S. W. Rep., 545; Venture Oil Co. v. Fretts, 152 Pa.; Huggins v. Daley, 99 Fed. Rep., 613; Eclipse Oil Co. v. South Penn. Oil Co., 34 S. E. Rep., 92; Londa v. Iron Co., 3 S. E. Rep., 120.

The instrument under consideration stipulates that appellant shall have six months after the partition of the land in which to prospect

same and complete a well, and further stipulates that appellant shall procure a partition of said land. No time is fixed within which a partition must be secured, but the presumption of law is that the parties intended a reasonable time. It is to be observed that this is not a stipulation that appellant should have six months after the partition to begin his explorations, but shall have the right to prospect the land for that length of time, and it would seem that under this stipulation the failure to complete a well within the time named would terminate appellant's rights under the contract. But be this as it may, we think it clear that unless appellant began within a reasonable time after the execution of the contract to perform his part of same by making a reasonable endeavor to secure a partition of the land, the grantors in said contract or their assignee could treat same as abandoned by the appellant and decline to recognize any further rights in appellant thereunder. A different rule is applied to contracts of this character from that applied to ordinary leases, and the decisions uniformly hold that contracts in which land is leased for the purpose of being prospected and developed for oil are to be construed most favorably for the lessor. Bryan, Laws of Petroleum, p. 146. In order to preserve his rights under a contract of this kind the lessee must begin within a reasonable time the performance of his part of such contract and continue in the performance of the same with reasonable diligence. The reason for this rule is thus forcibly stated in the case of Huggins v. Daley, supra: "While most of the cases have gone upon the ground of abandonment, the governing principle in all oil leases of the character under consideration is that the discovery and production of oil is a condition precedent to the continuance or vesting of any estate in the demised premises; that such leases vest no present title in the lessee, and if, at any time, the lessee has the option to suspend operations, the lease is no longer binding upon the lessor because of want of mutuality; and where the only consideration is prospective royalty from exploration and development, failure to explore renders the agreement a mere nudum pactum, and works a forfeiture of the lease, for it is of the very essence of the contract that work should be done. And the smaller the tract of land the more imperative is the need for prompt and efficient drilling; for oil operations cumber the land, rendering it unavailable for agricultural purposes. The landowner is entitled to his royalty as promptly as it can be had. The danger of drainage from his small holding is increased by delay, and the resulting damage not being susceptible of pecuniary measurement, is therefore not compensable. No such lease should be so construed as to enable the lessee who has paid no consideration to hold it merely for speculative purposes, without doing what he stipulated to do, and what was clearly in the contemplation of the lessor when he entered into the agreement."

The payment of a valuable consideration for a lease of this character can in no way affect the obligation of the lessee to proceed with diligence in the performance of his part of the contract. Of course a lessee might

by the payment of a valuable consideration procure an option for a fixed time within which to prospect and develop mineral lands, but such is not the character of the contract under consideration. The beginning of the time in which appellant was to prospect and develop the land was not definitely fixed in the contract, and unless he be held bound to take action within a reasonable time to procure a partition there would be no time limit to the option granted him to prospect and develop the land. Under this construction of the contract it would be void for want of mutuality. The primary purpose of the contract being the development of the land, if the lessee was not bound to proceed with such developments, the lessor would not be bound to perform his part of the contract. No development of the land could be made until a partition had been procured. The fact that other parties held an undivided interest in the land described in the lease was an obstruction to the development which appellant undertook to remove. If this obstruction had been a physical one, such as buildings or timber or any other character of physical obstruction which it was necessary to remove, and appellant had undertaken to remove same and to complete a well upon said land within six months after the removal of such obstruction, he certainly would not be permitted to wait any length of time he might choose to begin the removal of such obstruction and continue to hold the grantors in the lease bound thereby, but would be required to remove such obstruction within a reasonable time.

Our conclusion being that appellant acquired no vested interest in the subject matter of the contract under which he claims, and that in order for him to acquire any vested rights under said contract, he must have commenced within a reasonable time to perform the undertakings and agreements stipulated to be performed by him in said contract, it only remains for us to determine whether the evidence in this case justifies the conclusion of the trial court that appellant did not begin the performance of his part of the contract within a reasonable time.

The lease was executed on the 14th day of March, 1901, and the evidence shows that appellant took no steps of any kind towards procuring a partition of the land, and in no way offered to comply with his contract in the regard until the first of October, 1901, after the suit for partition had been brought by J. C. League and appellant had answered therein. By supplemental petition appellant seeks to excuse his delay in this matter by the fact that he did not actually know that he had agreed to procure said partition until he was so informed by appellee about October 1, 1901. The agreement to procure said partition was made by appellant's duly authorized agent, and appellant admits that he was bound thereby, and he was charged by law with notice of said agreement, and must be held to the same diligence in its performance as he would be held if said agreement had been executed by him. The suit for partition was filed on July 3, 1901, so far as this record shows without the knowledge of appellant, and he admits that he did nothing in the per-

formance of his contract to procure said partition beyond filing an answer in the case on February 21, 1902, in which he asks for a partition of the land and offers to pay the cost of said partition chargeable to the interest in the land covered by the lease.   We judicially know that two terms of the District Court of Galveston County were held between the time of the execution of the lease and the term to which the partition suit is brought, and no reason is shown why appellant could not have brought such suit to either of these terms of the court and procured a trial and partition of the land.   We think the evidence is sufficient to sustain the judgment of the lower court in canceling the contract under which appellant claims, upon the ground that appellant had failed to begin the performance of his part of said contract within a reasonable time, and had thereby forfeited his rights thereunder, and said judgment will be affirmed.

*Affirmed.*

Writ of error refused.