ZEPPA v. HOUSTON OIL CO. OF TEXAS.

No. 5163.

Court of Civil Appeals of Texas. Texarkana.

Feb. 11, 1938.

Rehearing Denied Feb. 17, 1938.

[redacted]

Saye & Saye, of Longview, for appellant.

Williams, Lee, Sears & Kennerly, of Houston, for appellee.

JOHNSON, Chief Justice.

This suit was filed by Houston Oil Company of Texas against J. Zeppa, trustee, in an action of trespass to try title to a strip of land approximately 730.5 varas north and south and 39.5 varas east and west, containing 5.01 acres located in Gregg county. Trial to the court without a jury resulted in judgment for plaintiff. Defendant has appealed.

The question involved is the proper construction to be placed upon the description of land contained in an oil and gas lease executed February 19, 1931, by M. B. Hughey et al. (termed in the record the Barber heirs) to Adams and Lyles. It will be referred to as the Adams and Lyles lease. The instrument described the land leased as follows:

"* * * all that certain tract of land situated in the County of Gregg, State of Texas, described as follows, to-wit:

100 acres out of the following described 168-33/100 acres of land:

Beginning at a stake in the N. E. corner of the M. B. Hughey tract;

Thence S. 79 deg. 01 min. W. for a distance of 750.4 ft. to a stake;

Thence N. 8′ 46″ W. for a distance of 1,428.9 ft. to a stake;

Thence S. 81′ 43″ W. for a distance of 1,833.1 ft. to a stake;

Thence N. 7′ 00″ W. for a distance of 1,982.7 ft. to a stake;

Thence N. 80′ 34″ E. for a distance of 2,849.3 ft. to a stake;

Thence S. 5′ 37″ E. for a distance of 1,063.1 ft. to a wagon axle;

Thence N. 81′ 07″ E. for a distance of 377.4 ft. to a wagon axle;

Thence S. 2′ 05″ E. for a distance of 1,492.6 ft. to a stake;

Thence S. 82′ 30″ W. for a distance of 446.6 ft. to an iron pin;

Thence S. 7′ 06″ E. for a distance of 897.3 ft. to the point of beginning, and containing in all 168.33 acres more or less. The 100 acres provided for shall be the E 100 acres out of the above described land and shall be so taken out of said land that there shall remain a strip of 18.33 acres between the 100 acres leased herein and 50 acres leased or agreed to be leased to the Gulf Production Company. All of which together comprise the 168.33 acres above described, and containing 100 acres more or less."

Appellant and appellee both claim under the Barber heirs, the common source of title. Appellee, by virtue of certain assignments, claims to own the leasehold interest in all the land conveyed by the Adams and Lyles lease and contends that the description in said lease when properly construed will cover and include the 5.01 acres of land in controversy. Appellant claims under an oil and gas lease executed by the Barber heirs to Joe Zeppa, trustee, dated November 22, 1933, describing the land in controversy.

The 50 acres mentioned in the Adams and Lyles lease as "leased or agreed to be leased to the Gulf Production Company" is described in a lease from the Barber heirs to the Gulf Production Company, dated January 30, 1931. It is the west 50 acres of said 168.33-acre tract.

A survey was subsequently made of the tract described by metes and bounds in the Adams and Lyles lease, referred to therein as containing "168.33 acres more or less." The survey showed that the tract actually contains 176.36 acres. The 5.01-acre strip is a part of the 176.36 acres. It lies between "the East 100 acres" and the "West 68.33 (50 plus 18.33) acres."

It is the contention of appellant that the Adams and Lyles lease conveys only "the East 100 acres" of the larger tract, hence does not include the 5.01-acre strip in controversy which admittedly lies west of the east 100 acres of the larger tract. Appellee contends that, when properly construed, the Adams and Lyles lease conveys all of the larger described tract, except the west 68.33 acres (being the 50 acres leased to the Gulf Production Company plus a strip of 18.33 acres mentioned in the Adams and Lyles lease). Appellee calls special attention to the clause added to the bottom of the description in the Adams and Lyles lease, reading: "And containing 100 acres more or less."

[redacted] Before entering upon a discussion of the language used in the Adams and Lyles lease, it will be observed and kept in mind that the purpose of construction

of an oil and gas lease, the same as any other contract, is to ascertain the intention of the parties as gathered from the entire instrument, considering all its parts, and giving effect to all its provisions if it can lawfully and reasonably be done. 14 Tex. Jur. p. 919, § 140.

It will be first noted that the Adams and Lyles lease does not purport to convey the whole larger tract, then except from the grant the 50 acres and the 18.33 acres mentioned therein. On the other hand, in the very beginning the grant itself is restricted to "100 acres out of the following described 168.33 acres of land." The words just quoted clearly evidence an intention to convey 100 acres—a limited quantity of land—out of a larger tract. To diminish or enlarge on the conveyance by construction is to completely deny effect to this plainly stated intention of the parties. For here the grant itself is of a specific quantity of land, a particular number of acres, to be taken out of a larger tract, as distinguishable from a conveyance of the whole larger tract, less or except a specified number of acres. Immediately after expressing the intention to convey a particular quantity of land out of a larger tract, the instrument gives a metes and bounds description of the larger tract from which the 100 acres conveyed is to be segregated. Then follows the process or mode of segregating the 100 acres from the larger tract, by use of plain language specifically pointing out and definitely describing the particular 100 acres conveyed. It reads: "The 100 acres provided for shall be the East 100 out of the above described land. * * *" Describing the land conveyed as "the East 100 acres" of the larger tract, which larger tract being described by metes and bounds such as here given, constitutes a definite description of the particular 100 acres conveyed. In Woods v. Selby Oil & Gas Co. Tex.Civ.App., 2 S.W.2d 895, 897, affirmed by Tex.Com.App., 12 S.W.2d 994, it is said:

"With the south line of said 155-acre tract agreed upon and well established, and its east and west lines also fixed and parallel, a call in said deed for 'the south 75 acres' of said 155-acre tract described and set apart to appellees said 75 acres in a parallelogram under the decisions and the rules of law upon which both parties agree, as definitely and specifically as if same had been so described by metes and bounds in said deed."

So it is seen that "the East 100 acres out of the above described land" plainly describes a particular 100 acres of land, the east, north, south, and west lines of which are as definitely fixed by settled rules of construction as if said lines had been minutely described. The description is applicable to no other land, for quantity and location are essential factors of the description. To this point no ambiguity appears in the language of the instrument, it plainly expresses the purpose to convey 100 acres of land out of the described larger tract, and it definitely describes the particular 100 acres intended to be conveyed. But it is contended that the language of the instrument, following that above discussed, conflicts with the purpose and intention evidenced by the previous language, in that, it is contended, such subsequent language shows an intention to establish the west boundary line of the land conveyed so as to coincide with the east boundary line of a strip to contain only or exactly 18.33 acres lying between the land conveyed and the west 50 acres leased to the Gulf Production Company; and to convey all of the larger tract described, less or except exactly 50 and 18.33 acres lying to the west of the line so established. The language reads:

"* * * and shall be so taken out of said land that there remain a strip of 18.33 acres between *the 100 acres herein leased* and 50 acres leased or agreed to be leased to the Gulf Production Company." (Italics ours.)

Should it be held that the above language evidences an intention to unconditionally and in all events establish and fix the west line of the 100 acres leased herein coincident with the east line of a strip to contain exactly 18.33 acres lying between the 100 acres leased herein and the 50 acres leased to the Gulf Production Company, such holding would irreconcilably conflict with the previously expressed intention of the parties that the land leased herein "shall be the East 100 acres out of the above described tract of land." If such effect were given to the language, it would completely strike down the plain and unambiguous description previously given of the land "leased herein," namely, "the East 100 acres out of the above described land." And we would then have left an incomplete description of the land leased—its so established west line only. It may here be noted that the words "more or less" become important only where the conveyance is by metes and bounds or

other definite description of a particular tract of land, and as qualifying an estimate of the quantity contained in such described tract. The words "more or less" are not descriptive of the boundaries. 70 A.L.R. 368.

We do not think the language last quoted from the lease must necessarily be construed as expressing the intention contended for by appellee. We think the language may reasonably be harmonized with that previously expressing the intention of the parties that the land leased "shall be the East 100 acres out of the above described land." It is not a strained construction of the language now under consideration to say that it was used with the intent to show the shape, location, and number of unleased acres owned by the lessors after segregation of the east 100 acres leased herein from the larger tract. Error in giving the number of acres in the unleased strip as 18.33 is accounted for by the mistaken estimate of the number of acres in the larger tract as "168.33 acres." The lease does not convey the entire larger tract, then except therefrom 50 acres plus 18.33 mentioned, hence the showing, by a subsequent survey of the entire larger tract, that the strip between the east 100 acres leased herein and the west 50 acres leased to the Gulf contains 23.33 acres instead of 18.33 as stated in the lease, in no wise inures to the benefit of the lessee.

We think our efforts to harmonize and give proper effect to all parts of the instrument is fairly supported within a reasonable meaning of its language. But should we be mistaken in our conclusion as to the purpose and meaning of the language last quoted from the instrument, there would still remain the fact that the purpose and intention of the parties that the land leased herein "shall be the East 100 acres out of the above described land" is more clearly evidenced than is the intention, if any, to unconditionally establish the west boundary line of the land conveyed to coincide with the east boundary line of a strip of exactly 18.33 acres to be located between the land leased and the west 50 acres, or of an intention to lease all the larger tract except 68.33 (50 plus 18.33) acres. We may go a step further and assume—which we do not affirm—that it is as tenable to construe the language as intending to lease all the larger tract except exactly 68.33 acres, as it is to construe it as intending to lease the east 100 acres of the larger tract, still effect should be given to the latter construction; for it appears to be the settled rule in this state that of two or more equally reasonable constructions of which the language of an oil and gas lease is susceptible the one more favorable to the lessor will be allowed to prevail. 31 Tex.Jur. 613, § 54.

So, it is our conclusion that the Adams and Lyles lease conveys 100 acres out of the described larger tract and that the particular 100 acres conveyed is "the East 100 acres" thereof, hence the lease did not convey the 5.01-acre strip in controversy lying west of said east 100 acres.

We are fortified in our construction by another cardinal principle that when a contract is ambiguous the construction adopted by the parties will be given great, sometimes controlling weight by the court. It appears that the parties placed the same construction upon the Adams and Lyles lease as we have placed upon it. On March 14, 1931, less than thirty days after its execution, Adams and Lyles assigned their entire estate in the lease to Heep Oil Corporation and referred to it as "the above described 100 acres of land." The assignment contains the same description as contained in the lease, except that it omits the words "and containing 100 acres more or less," and then designates the description as "the above described 100 acres of land." On April 24, 1931, the Heep Oil Corporation assigned to appellee an undivided 17.5/40 interest in the north 40 acres of "said 100 acre tract." The description in this assignment is the same as in the Adams and Lyles lease, except the words "and containing 100 acres more or less" are stricken, and the undivided interest assigned is described as being in "the North 40 acres of said 100 acre tract." Under a like description and omitting the words "more or less," the following assignments were made: The Heep Oil Corporation assigned to Refugio Oil Corporation an undivided ¼ interest in the south 60 acres of "the 100 acre tract hereinabove described in said (Adams and Lyles) lease." The Refugio Oil Corporation assigned to appellee said ¼ undivided interest in the south 60 acres of "said 100 acre tract." The Heep Oil Corporation assigned to appellee as undivided ½ interest in "the South 60 acres out of the tract hereinabove described." The Heep Oil Corporation assigned to Refugio Oil Corporation an undivided ⅛ interest in the north 40 acres out of "the 100 acre tract hereinabove described in said lease." The Refugio Oil Corporation assigned to appellee said ⅛ interest in the north 40 acres

of "said 100 acre tract." The Heep Oil Corporation assigned to appellee an undivided ¼ interest in the south 60 acres and an undivided 7/16 interest in the north 40 acres of "the above 100 acres." So it appears that the original lessees and the subsequent assignees in striking from the description in the lease the clause. "and containing 100 acres more or less" and in assigning undivided interests in the north 40 acres and the south 60 acres of "the above described 100 acres of land" and of "the above 100 acres of land" and of "said 100 acre tract," and of "the 100 acre tract hereinabove described in said (Adams and Lyles) lease," construed and treated the lease as describing and conveying 100 acres of land. The language of an oil and gas lease is generally regarded as that of the lessee. The construction placed by a party upon his own language constitutes the highest evidence of his intention, and where there is ambiguity in the instrument the courts usually allow that construction to control which the parties by their own acts and conduct put upon the contract before litigation arose. 10 T.J. p. 298. § 171.

The judgment of the trial court will be reversed and judgment here rendered for the appellant.