**NEWMAN BROTHERS DRILLING COMPANY et al., Appellants,**

v.

**STANOLIND OIL & GAS COMPANY et al., Appellees.**

No. 6632.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 5, 1956.

Rehearing Denied Dec. 3, 1956.

Cox, Patterson & Smith, San Antonio, Adkins, Folley, McConnell & Hankins, Amarillo, Ratliff, Conner & Walker, Spur, Dawson Bryant, Jayton, for appellants.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, L. A. Thompson, Warren Sparks and Arthur F. Whitt, Tulsa, Okl., and James K. Smith, Fort Worth, for appellees.

PITTS, Chief Justice.

This appeal involves a controversy over the ownership of an undivided one-half interest in and to the oil, gas and mineral interests in and under 786.33 acres of land in Kent County, Texas. On September 19, 1955, appellants, Newman Brothers Drilling Company, a partnership, composed of William C. Newman and John E. Newman, Blanco Oil Company, a corporation, E. Hayes Sieber, individually and as independent executor of the estate of Helen Corn Sieber, deceased, Harry C. Sieber, Alma Sieber Rasmussen and husband, Carl C. Rasmussen, Jerome T. Sieber, Jr., Helen Sieber Yoder and husband, Clarence H. Yoder, Marian Sieber Saybolt and husband, W. D. Saybolt, C. H. Grollman and wife, Jennie Grollman, John E. Tolls and wife, Audie Tolls, filed suit against appellees, Stanolind Oil and Gas Company, a corporation, Warren Petroleum Corporation, R. E. Smith, and several other named defendants, who gave notice of appeal to this Court but failed to perfect the same. Appellants alleged ownership in themselves of the subject matter as well as the claims of the interest in general of the respective parties and are seeking recovery under two separate counts pleaded, namely, one in statutory trespass to try title form and the other for a declaratory judgment declaring null and void and of no further force and effect two certain 5-year term mineral leases of date March 23, 1950, known as the Sieber and Mitchell leases under the terms of which appellees are claiming. Appellants sought recovery on the alleged grounds that the Sieber and Mitchell leases under the terms of which appellees are claiming had expired under their own terms on May 3, 1955, and certainly not later than June 3, 1955, because of no production and that appellants held title under the terms of subsequent leases executed by the owners thereof on June 1, 1955, which leases were wholly independent of the Sieber and Mitchell leases. Appellees contended that notwithstanding the fact that the first well drilled on the said land resulted in a dry hole, which was abandoned on May 3, 1955, they still held title under the terms of the Sieber and Mitchell leases by reason of another producing well designated as "Stanolind No. 1—Cravey" drilled on the land in question beginning on June 22, 1955, and completed on July 26, 1955. The parties joined issues on these respective claims made. Based upon its claim made, appellee, Stanolind Oil and Gas Company, also filed its cross action seeking to have the Sieber and Mitchell leases held to be valid and in full force and effect and also to have its title cleared of the alleged cloud existing thereon by reason of appellants' claims. It therefore appears that the sole controversy before us is to determine whether or not the Sieber and Mitchell leases have terminated as claimed by appellants. Such can be determined by giving a proper construction of the terms of the two said leases, which are identical in their material parts, and particularly to properly construe Paragraphs 2 and 5 thereof, which are controlling.

Appellants likewise sued appellees for an accounting of the gas and oil produced from

the second well drilled on the land known as Stanolind No. 1—Cravey since its completion on July 26, 1955, but by agreement of the parties and by order of the trial court such issues were severed from this action to be subsequently heard in a separate action.

It appears that this case was set for trial by agreement of all parties and with the understanding that it would be tried upon an agreed statement of facts and that it was accordingly so tried on December 2, 1955, before the court without a jury, upon all material issues based solely upon an agreed stipulation of facts and an agreed supplemental stipulation of facts, both duly signed by all parties or their counsel and introduced in evidence as "Plaintiffs'—Defendants' Exhibits No. 1 and No. 2." As a result of the trial a "take nothing" judgment was rendered against appellants and appellees were awarded the relief sought. After judgment was rendered for appellees and an appeal was perfected by appellants, the trial court, at the request of appellants, entered its order directing that "the original copy of the Stipulation of Fact and the Supplemental Stipulation of Fact, together with the respective exhibits attached thereto, and the two powers of attorney introduced without objections as Defendant Stanolind's Exhibits No. 1 and No. 2, which in the aggregate the Court finds to constitute all the evidence introduced on the trial of this cause" be and they were all sent to this Court on appeal and all of such are before us for consideration. These instruments, together with an approved brief statement of facts showing the agreed stipulations of fact introduced and the powers of attorney likewise introduced without objections are all before us.

The record reveals that on February 8, 1956, and before judgment was rendered by the trial court on February 27, 1956, appellees, Stanolind Oil and Gas Company, requested in writing the trial court to file its findings of fact and conclusions of law, which, over the objections of appellants,

were filed by the trial court on March 26, 1956. These findings and conclusions drawn in support of the trial court's judgment are rather lengthy and are all apparently predicated upon the agreed stipulation of facts jointly presented by the parties. There is no controversy about the two powers of attorney introduced in evidence without objections and they are not mentioned in the trial court's findings or conclusions. In fact, it appears that the two powers of attorney furnish no basis for determining any of the controlling issues here presented.

■ Appellants objected to the trial court filing findings of fact on the grounds that the material issues must be determined by the agreed stipulations of facts which admit by all parties that there is no dispute about the facts, for which reason the trial court was without power to find any fact and it was improper for it to attempt to do so. Appellants further charge that some of the purported findings the trial court made are inconsistent with and not supported by the agreed stipulations of facts upon which the trial court sought to rely for its findings.

A similar question to that here raised was also raised in the case of Hutcherson v. Sovereign Camp, W. O. W., 112 Tex. 551, 251 S.W. 491, 492, 28 A.L.R. 823, wherein the court said in part:

"The case was tried upon an agreed stipulation of facts, signed by the respective parties, and afterwards approved by the trial court as being the facts so agreed upon and upon which the case was tried. Article 1949 of the Revised Statutes [Vernon's Ann.Civ. St. art. 2177] provides for the trying of causes upon agreed statements of fact. When a case is so tried, the agreed statement is to be considered in the light of well-defined legal limitations, and in the nature of a special verdict; it admits there is no dispute as to the facts, and constitutes a request by each of the litigants for a

judgment, which each contends arises as a matter of law from the agreed facts.

"The courts are without power, in the absence of a provision in the agreed statement providing otherwise, to draw any inference, or find any facts, not embraced in the agreement, unless, as a matter of law, such other inferences are necessarily compelled; and the judgment of the court must only declare the law which necessarily arises from the facts agreed upon. Article 1949, R.S.; 38 Cyc.1934; Texas Mexican Railway Co. v. Scott, 60 Tex.Civ. App. 482, 129 S.W. 1170; Ozark Plateau Land Co. v. Hays, 105 Mo. 143, 16 S.W. 957."

That authority was cited with approval in the case of Abilene Hotel Corporation v. Gill, Tex.Civ.App., 187 S.W.2d 708, 712, and the same has been cited by many other cases.

A similar question was presented in the case of Texas Sporting Goods Co. v. Texas Gulf Sulphur Co., Tex.Civ.App., 81 S.W.2d 805, 808, wherein the court said in part:

"We think the proper judgment to be rendered in the case should be based upon the agreed facts and not upon the finding of facts made by the trial judge at the request of one of the parties, such requesting party not shown by the record, and such finding being contradictory in several essential matters to the agreed statement of facts."

Such a question likewise arose in the case of Cousins v. Cousins, Tex.Civ.App., 42 S.W.2d 1043, 1046, wherein this court said in part:

"When a case is tried in the court below upon an agreed statement, and upon appeal such statement constitutes the statement of facts here, both courts are limited to the facts as agreed to. The only material questions are those presented by the statement (Parker v. Portis, 14 Tex. 166), and the inquiry may not extend beyond its terms, so long as it is valid and is not rescinded (Aetna Life Insurance Co. v. Smith, Tex.Civ.App., 293 S.W. 243). In such case the court is confined to the facts contained in the statement, and may not make an additional finding, and none should be presumed. Texas Mexican Railway Co. v. Scott, 60 Tex. Civ.App. 482, 129 S.W. 1170."

The same rules of law were applied in the case of Hafale v. Canfield Mfg. Co., Tex.Civ.App., 268 S.W. 986, wherein it was held that the issues on appeal should be disposed of upon the facts as agreed to by the parties. In the case of Ocean Accident & Guarantee Corp. v. Riggins, Tex. Civ.App., 291 S.W. 276, 278, the rule was applied wherein it was held that "as a general rule, conclusions of fact by the trial court have no office in the trial of a case upon an agreed stipulation of facts." In the case of Strawn Independent School Dist. v. Stuart, Tex.Civ.App., 21 S.W.2d 713, 714, affirmed Tex.Com.App., 36 S.W.2d 480, the rule was applied and it was there held that under such circumstances the findings of the trial court should be disregarded.

Appellees cite and rely upon the recent case by this court of Donalson v. Horton, Tex.Civ.App., 256 S.W.2d 693, to justify the filing by the trial court of its findings in this case. That was a damage suit as a result of an automobile collision, tried before the court without a jury. While there was little controversy about the material facts there presented, there was no agreed statement of facts involved in that case. This court there held, however, that a trial court is not required to make findings concerning facts that are admitted.

Appellees also contend that the rules previously herein cited do not apply to this case because the original agreed stipulation of facts and the agreed supplemental stipulation signed by the parties both authorized either party to introduce addition-

al evidence upon the trial if desired and that they did introduce the two powers of attorney as additional evidence as previously herein shown. But the two powers of attorney constituted all of the additional evidence introduced and they were introduced without objections and do not constitute any evidence that helps to determine any issues here presented. The controlling issues here presented must be determined by the agreed stipulation of facts, together with the agreed supplemental stipulation of facts, and the two powers of attorney introduced will not aid in the least. For this reason, we believe the previous authorities cited control in this case. Under the record presented and the law governing such, it is our opinion that in the case at bar the trial court could not add to or take from the agreed stipulation of facts or the agreed supplemental stipulation of facts by making findings, for which reason the trial court's findings will be disregarded by us and we shall look exclusively to the agreed stipulation of facts together with the agreed supplemental stipulation of facts to determine the issues here presented.

The remainder of this case involves a question of lease construction and nothing more. Therefore, "* * * the primary and all important consideration is the intention of the parties as gathered from the instrument." Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043, 1044. The Sieber and Mitchell leases involved here are identical in their material terms and in our opinion are not ambiguous. Therefore, they each "must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument." Benge v. Scharbauer, 155 Tex. 447, 259 S.W.2d 166, 167. However, if the oil and gas leases here involved contain ambiguity and their terms are susceptible of more than one interpretation, it is the rule in Texas that such must be construed most favorably to the lessor and therefore against the lessee. Zeppa v. Houston Oil Co. of Texas, Tex. Civ.App., 113 S.W.2d 612, 615; Hitson v. Gilman, Tex.Civ.App., 220 S.W. 140, 144; Aycock v. Reliance Oil Co., Tex.Civ.App., 210 S.W. 848, 851; Emery v. League, 31 Tex.Civ.App. 474, 72 S.W. 603, 607.

The record, including the agreed stipulations of facts as controlling, reveals that the other undivided one-half interest in the leasehold estate not here involved is admittedly owned by appellee, Stanolind Oil and Gas Company, under the terms of a separate lease executed in 1948. Only the Sieber and Mitchell leases, each executed on March 23, 1950, for a primary term of five years covering an undivided one-half interest of the leasehold estate in the said lands, are here involved. The agreed stipulation of facts reveals that during the primary terms of the leases here under consideration no oil or gas well was drilled on the lands covered by the said two leases and no attempt was made to produce oil or gas thereon until a well was commenced on March 1, 1955, however, the leases were kept in force during the primary term of five years by the payment of rentals provided for in the leases; that on March 1, 1955, appellees, Warren Petroleum Corporation and R. E. Smith, the owners then of the Sieber and Mitchell leases here involved, commenced the drilling of a well on the lands described in the two leases, which well was designated as "Warren No. 1—Sieber;" that the drilling of the said well was prosecuted continuously until May 3, 1955 (after the terms of the primary leases had expired on March 23, 1955), when the well was completed as a dry hole without production and was formally plugged and duly reported to the Railroad Commission as such on May 4, 1955; that there was no re-working or further drilling of Warren No. 1—Sieber well after it was plugged as a dry hole on May 3, 1955; that there was no oil or gas discovered and no production of such on the land described in the two said leases at any time during the primary terms of the leases or thereafter until appellee, Stanolind Oil and Gas Company, began the drilling of a second well on June 22, 1955, designated as

"Stanolind No.1—Cravey" located at an entirely different location on the said land from the Warren No. 1—Sieber well, which second well was drilled continuously until completed on July 26, 1955, with the result of a commercial producer of oil and gas which has since continuously produced; that the drilling of the Stanolind No. 1—Cravey well was commenced 91 days after the primary terms of the two leases in question had expired and 50 days after the Warren No. 1—Sieber well had been plugged and abandoned on May 3, 1955; that appellees, Warren Petroleum Corporation and R. E. Smith, original owners of the Sieber and Mitchell leases in question, did on June 16, 1955, enter into a "Farmout Contract" to assign without warranty the said leases to appellee, Stanolind Oil and Gas Company, and the language therein used . reveals that such was done with knowledge that appellants had, subsequent to May 3, 1955, purchased the mineral rights here involved and were claiming that the Sieber and Mitchell leases here involved had expired by their own terms and were no longer valid. The record, and particularly the agreed stipulations of facts, further reveal that appellants had claimed ownership to the minerals in and under the land here involved since June 1, 1955, by reason of subsequent leases executed therefor by the owners thereof; that notice by telephone and in writing, of date June 10, 1955, of appellants' claims that the Sieber and Mitchell leases had expired by their own terms and of appellants' claimed ownership of the minerals involved had actually been previously given to appellees, Stanolind Oil and Gas Company, Warren Petroleum Corporation and R. E. Smith, by appellant, Newman Brothers Drilling Company; that in accordance with the terms of the "Farmout Contract" appellees, Warren Petroleum Corporation and R. E. Smith, did thereafter execute an assignment of the said leases to appellee, Stanolind Oil and Gas Company, covering "all their right, title and interest in and to the following described oil, gas and mineral leases * * * subject to the overriding royalties

* * * without warranty of any kind;" that appellee, Stanolind Oil and Gas Company, predicates its claims of ownership to the 1950 Sieber and Mitchell leases upon the "Farmout Contract" and the assignment as a result thereof just previously herein mentioned, however, it admittedly did own the other undivided one-half interest of minerals in and under the said land as previously herein stated by reason of what was known as the Cravey leases executed in 1948 which alone gave appellee, Stanolind Oil and Gas Company, the right to drill the Stanolind No. 1—Cravey well which was the only producing well drilled upon the 786.33 acres of land here involved.

While the Sieber and Mitchell leases here involved have been fully examined, only the pertinent clauses found in Paragraphs 2 and 5 thereof will be here copied because of the extreme length of the said leases and because all parties hereto have copied only these two said paragraphs in their respective briefs and are relying primarily for recovery upon a proper interpretation and construction given the language therein used. The language used in Paragraphs 2 and 5 of the two said leases in question is identical and is as follows:

"2. Subject to the other provisions herein contained, this lease shall be for a term of five (5) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land hereunder.

"5. If prior to discovery of oil or gas on said land Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or re-working operations within sixty (60) days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion of

dry hole or cessation of production. If at the expiration of the primary term oil, gas or other mineral is not being produced on said land but Lessee is then engaged in drilling or re-working operations thereon, this lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil, gas or other minerals so long thereafter as oil, gas or other mineral is produced from said land."

This identical language has already been recently construed by the Supreme Court of Texas, where used in a similar lease under controversy, in the case of Rogers v. Osborn, 152 Tex. 540, 261 S.W.2d 311, 312. The controlling language used in the lease involved in the Rogers-Osborn case is admittedly the same identical language as that used in the leases here involved. In that case the primary term of the lease involved expired on September 21, 1947, but prior thereto, on May 15, 1947, a first well was commenced on the land involved but the derrick was torn down and the drilling tools were taken away on July 30, 1947. A re-working rig was moved over the same well on November 12, 1947, but the operator was unable to complete the well as a producer and moved away on November 29, 1947, since which time no further work was done on that first well. On October 25, 1947, appellants notified appellees of their claims that the lease relied upon by appellees had terminated. However, on October 31, 1947, appellees commenced well No. 2 at a different place, which was thereafter completed as a gas producer but was shut down for lack of a market. In that case the first well was commenced before the primary terms of the lease expired, but the second well was commenced 40 days after the primary terms of the lease expired. As a result of such facts, the Supreme Court there held as a matter of law that there was no production from the first well, just as there was no production from the first well in the case at bar; that appellees were upon notice when they drilled the second well just as appellees were upon notice here when the second well was drilled; and that lessees in order to keep the leases alive could not tack on the period of drilling of the producing well No. 2 to the period of drilling and re-working on well No. 1, a nonproducer. Nevertheless, the lessees (appellees here) are seeking to tack on the period of time it took to drill well No. 2, a producing well, to the period of time it took to drill the first well, a dry hole, in order to try to keep the two leases in question alive. However, both the trial court and the Court of Civil Appeals held in the Rogers-Osborn case that the lease in question was valid but the Supreme Court reversed and rendered judgment terminating the lease as of date November 29, 1947. In construing the same language similarly there used, the Supreme Court pronounced a rule of law, which we believe to be controlling here, in the following language:

"This is a suit to terminate an oil and gas lease. The principal questions are: Whether work done upon a first well in an unsuccessful effort to make it produce at and after the expiration of the primary term kept alive the lease; and if so, whether the drilling of and production from a second well commenced after the expiration of the primary term will support the lease. Our answer to the first is 'Yes' and to the second 'No'."

The Court then analyzed the facts and gave its reasons for applying the rule announced. The Court further said in effect the language used in Paragraph 5 should not be "jumbled" so as to mislead. In considering a motion for rehearing, the Court there further said, " * * * the first well must result in production to support the lease." In the case at bar, it is admitted that the first well did not produce. According to the holding of the Supreme Court, the Sieber and Mitchell leases terminated on March 23, 1955, unless some provision other than the primary terms thereof kept them alive. As we understand the holding of the

Supreme Court the completion of the dry hole on May 3, 1955, kept the leases alive until that date and no longer.

■ Applying the rules of law announced by the Supreme Court in the Rogers-Osborn case to the facts in the case at bar, the continuous work done on the first well, Warren No. 1—Sieber, commenced on March 1, 1955, kept the leases in question alive even after the expiration of the primary term until it was abandoned as a dry hole on May 3, 1955. But the drilling of a second well, Stanolind No. 1—Cravey, at an entirely different location, commenced on June 22, 1955, long after the primary term of the leases had expired and 50 days after the first well had been abandoned as a dry hole, will not support the leases and keep them alive.

The Rogers-Osborn case was a jury case and this was not, and there are other minor distinctions between the two cases, but we believe such distinctions are immaterial and do not interfere with the application of the same rule in the case at bar. We further believe that the holding of the Court in that case is contrary to the ultimate contention here made by appellees but supports the ultimate contention made by appellants. Cases of other jurisdictions are discussed by both appellees and appellants here but we feel bound in any event by the law as pronounced by the court of last resort in our own jurisdiction.

In the Rogers-Osborn opinion, the Supreme Court cited, among other authorities, the case of Garcia v. King, 139 Tex. 578, 164 S.W.2d 509. In that case the Court said in part on page 513 of 164 S.W.2d:

"The lessors should not be required to suffer a continuation of the lease after the expiration of the primary period merely for speculation purposes on the part of the lessees. Since the lease was no longer yielding a profit to the lessees at the termination of the primary period, the object sought to be accomplished by the continuation there-

of had ceased, and the lease had terminated."

We think the principles of law there announced apply well to the situation here presented by the agreed stipulation of facts.

For the reasons stated the judgment of the trial court is here reversed and judgment is here rendered for appellants terminating the Sieber and Mitchell leases in question executed of date March 23, 1950, for a five-year primary term and they are both hereby terminated as of date May 3, 1955. That part of the trial court's judgment awarding appellee, Stanolind Oil and Gas Company, recovery on its cross action is likewise reversed and judgment is here rendered denying said appellee any recovery on its cross action. Reversed and rendered.

MARTIN, Justice (concurring).

This concurring opinion is written in the belief that the final disposition of this cause by the majority opinion is correct under the principles hereinafter discussed. There is a distinction between a well in which there is non-production and a dry hole. Therefore, Rogers v. Osborn, 152 Tex. 540, 261 S.W.2d 311, is not a complete answer to the problem involved in this appeal. Appellees' problem under such decision as viewed herein, is that there is no language in the leases, other than the 30-day provision, which could extend the primary term to cover the completion of drilling of the dry hole.

This court is bound by the rulings in the majority opinion of the Supreme Court in Rogers v. Osborn, supra, in so far as such rulings are applicable here. In ruling upon the 60-day and the 30-day provision in the lease in issue in that cause, the Supreme Court stated: "The conditions contained in the two separate sentences should not be jumbled." Since the first well drilled by appellee was a dry hole only the following language from the leases here in issue will be quoted:

"5. If prior to discovery of oil or gas on said land, Lessee should drill a dry hole or holes thereon * * * this lease shall not terminate if the Lessee commences additional drilling or re-working operations within sixty (60) days thereafter * * *."

But, appellee must of necessity rely upon the last sentence in Paragraph 5, the 30-day provision as quoted in the majority opinion, to extend the primary term of the leases to the date of the completion of the dry hole. There is no other provision, or other language in the leases, which may be relied upon to extend the primary term of the lease to cover the completion of the dry hole. Since the conditions in the 60 and the 30-day sentences cannot be interchanged or "jumbled" it follows as to the 60-day provision that although appellee was actually engaged in the drilling of the dry hole on the date of termination of the primary term of the leases, there was no applicable provision in the leases extending such primary term to the date of the completion of the dry hole. Therefore, the leases terminated under the 60-day provision on the date of the expiration of the primary term regardless of the drilling in progress which resulted in a dry hole.

The above interpretation of the 60-day provision is substantiated by the term "shall not terminate" as used in the sentence with reference to the lessee commencing drilling or re-working operations within 60 days. The leases would have had to be in effect during the drilling of the dry hole to comport with the provision "shall not terminate" —such leases could not terminate if they were not in effect. Unless the language of the 60 and the 30-day provision is used interchangeably there is no language in the leases providing for an extension of the primary term within which to complete the drilling of a dry hole under the 60-day provision. However, the words "this lease shall not terminate" clearly extends the primary term of the lease for an additional 60 days within which lessee, following drilling of a dry hole is permitted to commence additional drilling operations. But, the dry hole must be completed within the primary term.

The effect of the lease provisions, both the 60 and the 30-day stipulation, as viewed in this concurring opinion, may be summarized as follows. The language of the two provisions may not be used interchangeably or jumbled as ruled in Rogers v. Osborn, supra. The opinion of the Supreme Court, as interpreted herein, requires a ruling here that the leases in issue terminated under either the 60-day or the 30-day provision. As stated above, there is no provision in the 60-day clause in the leases which will extend the primary term thereof to the date of the completion of the dry hole—therefore, under this provision the leases terminated on completion of the primary term. Under the 30-day provision, if the same were applicable to the drilling of a dry hole, the lease remained in force only "so long as operations were prosecuted with no cessation of more than thirty (30) consecutive days." Appellees' drilling operations ceased from May 3, 1955, when the dry hole was completed, to June 22, 1955, when drilling operations on the second well commenced, a period of more than 30 days. Under any view of the 30-day provision, if the drilling of the dry hole to completion extended the primary term of the leases and kept them alive until the completion of such dry hole, the commencement of drilling on the second well was more than 30 days after the completion of such dry hole and thus did not comply with the 30-day provision.

Appellee's drilling operations did not comply with either the 60-day or the 30-day provision of the leases in issue and, therefore, such leases terminated on the final date of the primary term or, in any event, not more than thirty days following the completion of the dry hole.